UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY; and
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

       Plaintiffs,

vs.

GREATER LAKES AMBULATORY
SURGICAL CENTER, LLC d/b/a
ENDOSURGICAL CENTER AT GREAT LAKES;
GREATER LAKES ANESTHESIA, PLLC;
SUMMIT MEDICAL GROUP, PLLC;
GREATER LAKES MEDICAL MANAGEMENT, LLC;
MICHIGAN HEALTH CARE SERVICES MANAGEMENT, LLC;
PACIFIC MARKETING, INC.;
ELITE SURGICAL MEDIA CONSULTANTS, L.L.C.;
WEINER & ASSOCIATES, PLLC;
WILLIAM J. FOCAZIO, M.D.; MICHAEL ANGELO;
REESE JAMES, D.O.; MICHIGAN SURGICAL GROUP, PLLC;
DAVID P. JANKOWSKI, D.O.; LUCIA J. ZAMORANO, M.D.;
ARIA O. SABIT, M.D.; MICHIGAN BRAIN & SPINE
PHYSICIANS GROUP, PLLC; MARTIN F. QUIROGA, D.O.;
and EDWARD FIROSZ

       Defendants.

Case No.12-13500
Hon. Gerald E. Rosen

_____/

## DEFENDANT WEINER & ASSOCIATES, PLLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

NOW COMES, the Defendant, WEINER & ASSOCIATES, PLLC, by and through their

attorneys, BEN M. GONEK and the firm of GIARMARCO, MULLINS, & HORTON, P.C., and

for the reasons set forth within the accompanying Brief in Support of Defendant's Motion to

Dismiss, respectfully requests that this Honorable Court grant this Motion and dismiss the Complaint, in its entirety.

Concurrence was sought for the Relief Requested in this Motion, but was not forthcoming.

Respectfully Submitted,


/s/ Ben M. Gonek
Giarmarco, Mullins, & Horton, P.C.
Attorney for Defendant
101 W. Big Beaver Rd., 10th Floor
Troy, Michigan 48084-5280
(248) 457-7084
bgonek@gmhlaw.com
P43716

Date: October 19, 2012

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY;
ALLSTATE INDEMNITY COMPANY; and
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,

      Plaintiffs,

vs.

Case No.12-13500
Hon. Gerald E. Rosen

GREATER LAKES AMBULATORY
SURGICAL CENTER, LLC d/b/a
ENDOSURGICAL CENTER AT GREAT LAKES;
GREATER LAKES ANESTHESIA, PLLC;
SUMMIT MEDICAL GROUP, PLLC;
GREATER LAKES MEDICAL MANAGEMENT, LLC;
MICHIGAN HEALTH CARE SERVICES MANAGEMENT, LLC;
PACIFIC MARKETING, INC.;
ELITE SURGICAL MEDIA CONSULTANTS, L.L.C.;
WEINER & ASSOCIATES, PLLC;
WILLIAM J. FOCAZIO, M.D.; MICHAEL ANGELO;
REESE JAMES, D.O.; MICHIGAN SURGICAL GROUP, PLLC;
DAVID P. JANKOWSKI, D.O.; LUCIA J. ZAMORANO, M.D.;
ARIA O. SABIT, M.D.; MICHIGAN BRAIN & SPINE
PHYSICIANS GROUP, PLLC; MARTIN F. QUIROGA, D.O.;
and EDWARD FIROSZ

      Defendants.

_____/

## BRIEF IN SUPPORT OF DEFENDANT WEINER & ASSOCIATES, PLLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## TABLE OF CONTENTS

Index of Authorities.................................................................................iv

Index of Exhibits...................................................................................xiii

Questions Presented...............................................................................ix

Controlling Authorities...........................................................................x

Introduction...........................................................................................1

Summary of Allegations in the Complaint...............................................1

    A.  Summary of General Allegations...............................................1

    B.  Summary of RICO Conspiracy Allegations.................................2

    C.  Summary of Allegations in Support of Count XI.........................5

    D.  Summary of Allegations in Support of Count XII........................6

Standard of Review.................................................................................6

Argument...............................................................................................7

    A.  PLAINTIFFS FAILED TO STATE A CLAIM UPON WHICH
        RELIEF CAN BE GRANTED AND FAILED TO SATISFY THE
        APPLICABLE PLEADING REQUIREMENTS...............................7

        I.  Allstate Fails to State any Cognizable RICO Conspiracy Claim.................9

        II.  Allstate Fails to Establish a "Pattern of Racketeering Activity
          by Weiner & Assoc.................................................................11

        III. Allstate Fails to Allege that Weinter and Assoc. Participated in the
          Alleged Conspiracy...............................................................13

        IV. Allstate Also Violates Fed. R. Civ. P. 9(b)..............................13

    B.  PLAINTIFFS' CONSPIRACY CLAIMS ARE REVERSE PREEMPTED
        BY THE MCCARRAN-FERGUSON ACT..................................15

C.  COUNTS XI & XIII OF PLAINTIFFS' COMPLAINT DO NOT COMPLY
     WITH THE PLEADING REQUIREMENTS OF THE FEDERAL RULES
     OF CIVIL PROCEDURE, ARE DUPLICATIVE, AND DO NOT STATE
     A SEPARATE CAUSE OF ACTION...........................…..............................17

D.  ALLSTATE WAIVED THEIR RIGHT TO CONTEST THE PRIORITY OF THE
     CLAIMS PAID...............................................................................…..19

Relief Requested..................................................................................…...20

## INDEX OF AUTHORITIES

**Cases:**

*Advocacy org. For Patients & Providers v Auto Club ins. Ass'n,*
176 F.3d 315, 322 (6th Cir. 1999))……………………………………..……………..fn 4, 18

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.,*
2005 U.S. Dist. LEXIS 29666, *24-42 (E.D.N.Y. Feb. 22, 2005)…………………11, Exhibit 4

*Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.,*
256 F.R.D. 49, 62 (D. Conn. 2008)…………………………………………...………9, 12, 15

*Angott v. Chubb Group of Ins. Cos.,*
717 N.W2.d 341, 345 (Mich. Ct. App 2006)……………………………………………19

*Ashcroft v. Iqbal,*
556 U.S. 662, 667-78; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) 129 S. Ct. at 1949…...6, 10, 12

*Beck v. Cantor Fitzgerald,*
621 F. Supp. 1547, 1563 (N.D. Ill. 1985)……………………………………………...…….12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555; 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007)…………………………6, 10

*Blount Fin. Services, Inc. v. Walter E. Heller & Co.,*
819 F.2d 151, 152 (6th Cir. 1987)…………………………………………………………11

*Boyle v. U.S.,*
556 U.S. 938, 946; 129 S. Ct. 2237; 172 L. Ed. 2d 1265 (2009)…………………….…………8

*C & L Ward Bros. v. Outsource Solutions, Inc.,*
2012 U.S. Dist. LEXIS 109068, *12-14 ( E.D. Mich. Aug. 3, 2012)……………….8-9, Exhibit 3

*Central Distributors of Beer, Inc. v. Conn,*
5 F.3d 181, 184 (6th Cir. 1993)………………………………………………...……..8-9

*Craighead v. E.F. Hutton & Co.,*
899 F.2d 485, 495 (6th Cir. 1989)…………………………………………………………8

*Dunn v. State Farm Mut. Auto. Ins. Co.,*
724 F. Supp. 2nd 701, 706 (E.D. Mich. 2010)………………………………………10, 18-19

*Durant v. Servicemaster Co.,*
159 F. Supp. 2d 977, 981 (E.D. Mich. 2001)………………………………………………10

iv

*Eidson v. State of Term. Dep't of Children's Servs.,*
510 F.3d 631, 634 (6th Cir. 2007)……………………………………………………………18

*Frank v. Dana Corp.,*
547 F. 3d 564, 570 (6th Cir. 2008)…………………………………………………..……9

*Genord v. Blue Cross & Blue Shield of Michigan,*
440 F.3d 802, 805-806 (6th Cir. 2006)…………………………………………………16, 17

*Gotham Prints, Inc. v. American Speedy Printing Ctrs., Inc.,*
863 F. Supp. 447, 458 (E.D. Mich. 1994)……………………………………………………11

*Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick,*
726 F. Supp. 1083, 1087 (E.D. Mich 1989)……………………………………………..9-10

*Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,*
955 F. Supp. 248, 254 (S.D.N.Y.1997)……………………………………………………13

*Heinrich v. Waiting Angels Adoption Servs.,*
668 F. 3d 393, 411 (6th Cir. 2012)……………………………………………7, fn 2, 11

*Jackson v. Sedgwick Claims Management,*
2010 U.S. Dist. LEXIS 22792, 115-116 (E.D. Mich. March 11, 2010)……………….8, Exhibit 2

*Kenty v. Bank One, Columbus, N.A.,*
92 F.3d 384, 392 (6th Cir. 1996)………………………………………………..……16

*Lakeland Neurocare Ctrs. V. State Farm Mut. Ins. Co.,*
250 Mich. App. 35, 40-41 (2002)…………………………………………………...……16-17

*McGee v. State Farm Mut. Auto. Ins. Co.,*
2009 U.S. Dist. LEXIS 60229, 17-18 (E.D.N.Y. July 10, 2009)……………………..12, Exhibit 5

*Moon v. Harrison Piping Supply,*
465 F. 3d 719, 723 (6th Cir. 2006)……………………………………………….....8

*Moore v. First Security Cas. Co.,*
224 Mich App 370, 376; 568 N.W.2d 841 (Mich. Ct. App 1997)…………………...…….19

*Nasser v. Auto Club Ins. Ass'n,*
435 Mich 33, 48-51 (1990)…………………………………………………...…………19

*North Am. Catholic Educ. Programming Found., Inc. v. Cardinale,*
567 F.3d 8, 13 (1st Cir. 2009)…………………………………………………………7

*Paycom Billing Services, Inc. v. Payment Resources International,*
212 F. Supp. 2d 732, 736 (W.D. Mich. 2002)……………………………………..……………11

*Powers v. British Vita P.L.C.,*
57 F.3d 176, 184 (2d Cir.1995)……………………………………………………………..…11

*Reves v. Ernst & Young,*
507 U.S. 170, 185; 113 S. Ct. 1163; 122 L. Ed. 2d 525 (1993)……………………………….13

*Riverview Health v. Medical Mut. Of Ohio,*
2008 U.S. Dist. LEXIS 75723 (S.D. Ohio 2008)……………………..………...………17, Exhibit 7

*Ross v. Auto Club Group,*
748 N.W.2d 552 (Mich. 2008)……………………………………………………..…………fn 4

*Shavers v. Attorney General,*
267 N.W.2d 72, 77 (Mich. 1978)…………………………………………………………..fn 4

*Sundahl v. State Farm Mut. Auto. Ins. Co.,*
2009 U.S. Dist. LEXIS 68093 at *10-11 (E.D.N.Y. Mar. 31, 2009)…………..………..12, Exhibit 6

*Thielen v. GMAC Mortgage Corp.,*
671 F. Supp. 2d 947, 950-51 (E.D. Mich. 2009)………………………………………..………6

*U.S. v. Jamieson,*
427 F. 3d 394, 402 (6th Cir. 2005)………………………………………………..………fn 2

*Washington v. Sinai Hosp.,*
478 Mich 412, 418; 733 N.W.2d 755 (2007)……………………………………..…………fn 5

*Williams v. AAA Michigan,*
646 NW2d 476, 485 (Mich. Ct. App 2002)……………………………………………………19

**Statutes and Rules:**

15 U.S.C. §§ 1011, *et seq*…………………………………………………………………15

15 U.S.C. § 1012(a)…………………………………………………………..……………15-16

15 U.S.C. § 1012(b)……………………………………………………………………………16

18 U.S.C. §1341………………………………………………………………………………8

18 U.S.C. §1961(4)……………………………………………………………………………8

18 U.S.C. §1962(c)…………………………………………………..……………………1, 7, 9

Fed. R. Civ P. 8(a)………………………………………………………...…………1, 3

Fed. R. Civ P. 9(b)………………………………………………………………1, 3, 17

Fed. R. Civ. P. 12(b)(1)…………………………………………………………………1, 3

Fed. R. Civ. P. 12(b)(6)…………………………………………………………1, 3, 6

MCL § 500.3011 et. seq……………………………………………...………………3

MCL § 500.3105……………………………………………………………………18

MCL § 500.3107(1)(a)……………………………………………………………18

MCL § 500.3157……………………………………………………...……………18

## INDEX OF EXHIBITS

1    Complaint

2    *Jackson v. Sedgwick Claims Management,*
     2010 U.S. Dist. LEXIS 22792, 115-116 (E.D. Mich. March 11, 2010)

3    *C & L Ward Bros. v. Outsource Solutions, Inc.,*
     2012 U.S. Dist. LEXIS 109068, *12-14 ( E.D. Mich. Aug. 3, 2012)

4    *AIU Ins. Co. v. Olmecs Med. Supply, Inc.,*
     2005 U.S. Dist. LEXIS 29666, *24-42 (E.D.N.Y. Feb. 22, 2005)

5    *McGee v. State Farm Mut. Auto. Ins. Co.,*
     2009 U.S. Dist. LEXIS 60229, 17-18 (E.D.N.Y. July 10, 2009)

6    *Sundahl v. State Farm Mut. Auto. Ins. Co.,*
     2009 U.S. Dist. LEXIS 68093 at *10-11 (E.D.N.Y. Mar. 31, 2009)

7    *Riverview Health v. Medical Mut. Of Ohio,*
     2008 U.S. Dist. LEXIS 75723 (S.D. Ohio 2008)

## QUESTIONS PRESENTED

**A. HAVE PLAINTIFFS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND HAVE PLAINTIFFS FAILED TO SATISFY THE APPLICABLE PLEADING REQUIREMENTS?**

> Defendant answers: Yes.

> Plaintiffs answer: No.

**B. ARE PLAINTIFFS' CONSPIRACY CLAIMS REVERSE PREEMPTED BY THE MCCARRAN-FERGUSON ACT?**

> Defendant answers: Yes.

> Plaintiffs answer: No.

**C. DO COUNTS XI & XIII OF PLAINTIFFS' COMPLAINT COMPLY WITH THE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE, ARE THEY DUPLICATIVE, AND DO THEY STATE A SEPARATE CAUSE OF ACTION?**

> Defendant answers: No, Yes, No.

> Plaintiffs answer: Yes, No, Yes.

**D. HAS ALLSTATE WAIVED THEIR RIGHT TO CONTEST THE PRIORITY OF THE CLAIMS PAID?**

> Defendant answers: Yes.

> Plaintiffs answer: No.

## CONTROLLING AUTHORITY

**Cases:**

*Ashcroft v. Iqbal,*
556 U.S. 662, 667-78; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) 129 S. Ct. at 1949......6, 10, 12

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544, 555; 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007)...................................6, 10

*Blount Fin. Services, Inc. v Walter E. Heller & Co.,*
819 F.2d 151, 152 (6th Cir. 1987)...................................................................11

*Boyle v. U.S.,*
556 U.S. 938, 946; 129 S. Ct. 2237; 172 L. Ed. 2d 1265 (2009)......................................8

*Central Distributors of Beer, Inc. v. Conn,*
5 F.3d 181, 184 (6th Cir. 1993)................................................................8-9

*Craighead v. E.F. Hutton & Co.,*
899 F.2d 485, 495 (6th Cir. 1989).................................................................8

*Dunn v. State Farm Mut. Auto. Ins. Co.,*
724 F. Supp. 2nd 701, 706 (E.D. Mich. 2010)...................................................10, 18-19

*Durant v. Servicemaster Co.,*
159 F. Supp. 2d 977, 981 (E.D. Mich. 2001)........................................................10

*Eidson v. State of Term. Dep't of Children's Servs.,*
510 F.3d 631, 634 (6th Cir. 2007)..................................................................18

*Frank v. Dana Corp.,*
547 F. 3d 564, 570 (6th Cir. 2008)..................................................................9

*Genord v. Blue Cross & Blue Shield of Michigan,*
440 F.3d 802, 805-806 (6th Cir. 2006)...........................................................16, 17

*Gotham Prints, Inc. v. American Speedy Printing Ctrs., Inc.,*
863 F. Supp. 447, 458 (E.D. Mich. 1994)...........................................................11

*Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick,*
726 F. Supp. 1083, 1087 (E.D. Mich 1989).......................................................9-10

*Heinrich v. Waiting Angels Adoption Servs.,*
668 F. 3d 393, 411 (6th Cir. 2012)..........................................................7, fn 2, 11

*Kenty v. Bank One, Columbus, N.A.,*
92 F.3d 384, 392 (6th Cir. 1996)……………………………………………..……...16

*Moon v. Harrison Piping Supply,*
465 F. 3d 719, 723 (6th Cir. 2006)…………………………………………………...8

*Reves v. Ernst & Young,*
507 U.S. 170, 185; 113 S. Ct. 1163; 122 L. Ed. 2d 525 (1993)………………………………13

*Thielen v. GMAC Mortgage Corp.,*
671 F. Supp. 2d 947, 950-51 (E.D. Mich. 2009)………………………………….………6

### **Statutes and Rules:**

18 U.S.C. §1341……………………………………………………………………….8

18 U.S.C. §1961(4)…………………………………………………………………….8

18 U.S.C. §1962(c)…………………………………………………………1, 7, 9

Fed. R. Civ P. 8(a)……………………………………………………...………1, 3

Fed. R. Civ P. 9(b)…………………………………………………….…………1, 3, 17

Fed. R. Civ. P. 12(b)(1)…………………………………………………………1, 3

Fed. R. Civ. P. 12(b)(6)…………………………………………………………1, 3, 6

## I.  INTRODUCTION

Plaintiffs Allstate Insurance Company, *et. al.* (collectively, "Allstate") filed this action against Defendant Weiner & Associates, PLLC ("Weiner & Assoc."), a host of medical provider facilities and physicians (collectively, the "Medical Provider Defendants") and a lawyer referral service, "800-US-LAWYER," claiming that the eighteen Defendants conspired to fraudulently mail medical No-Fault Act claims to Allstate in furtherance of a RICO Enterprise, all in violation 18 U.S.C. §1962(c) of RICO.

Generally, Allstate is claiming that Defendants conspired to generate claims and collect payment from Allstate for patients who were in, or claimed to have been in, motor vehicle accidents. Allstate alleges that Defendants conspired to refer its insureds for medical treatment that was not reasonably necessary for care, recovery, and rehabilitation in order to submit inflated bills to it for payment.

In lieu of answering Allstate's baseless and unsupported allegations contained within the Complaint, Defendant Weiner & Assoc. is moving for dismissal of its Complaint pursuant to Fed. R. Civ. P. 8(a), 9(b), 12(b)(1) and 12(b)(6).

## II. SUMMARY OF ALLEGATIONS IN THE COMPLAINT

### A.  Summary of General Allegations

On August 9, 2012, Plaintiff filed a 91-page, 693 paragraph, 14 count Complaint straining to allege a complex RICO conspiracy designed to facilitate the Medical Provider Defendants' mailing of false and misleading No-Fault claims to Allstate. The claims were allegedly false and misleading because Allstate disagrees with the medical decision-making, *i.e.*, that the care was not medically necessary, rendered so poorly so as to make it medically unnecessary and/or unreasonably priced. Finally, Allstate contends that all of this alleged

1

unlawful conduct was committed in furtherance of a RICO conspiracy. *See, e.g.*, Exhibit 1, Complaint, ¶¶ 1-11, 89-92, 97, 109, 505, 508, 510-511, 513-516, 519-524, 549-555, 576-582, 603-609, 630-637, 658-664, 666-672 & 679-683.

Generally, Allstate contends that Weiner & Assoc. intentionally participated in this conspiracy with the Medical Provider Defendants in Counts II, IV, VI, VIII & X, and simply recasts the same conclusions, rebranded as claims for common law fraud (Count XI) and unjust enrichment (Count XIII), seeking return of the funds it contends it paid the Medical Provider Defendants (but not to Weiner & Assoc.) on the allegedly fraudulent No-Fault claims that the alleged RICO persons mailed to Allstate in furtherance of the alleged RICO Enterprise and conspiracy. Comp., ¶¶ 666-672 & 679-683. Notably, Allstate admits to paying the underlying claims to the medical providers in an amount that exceeds $170,000. *See, e.g*, Comp. ¶¶ 521-23, 526, 536, 563, 590, 617, 645, 671, 674, 677, 679.

B. Summary of RICO Conspiracy Allegations

Allstate concludes, without any support that Weiner & Assoc. knowingly and purposefully entered into a conspiracy to conduct a RICO mail-fraud scheme to fraudulently bill for and collect benefits under the Michigan No-Fault Act, through its alleged facilitation of the operation of: (a) Defendant Endosurgical (Count II); (b) Defendant Greater Lakes Anesthesia (Count IV); (c) Defendant Summit Medical Group (Count VI); (d) Defendant Pacific Marketing (Count VIII); and (e) Defendant Elite Surgical (Count X). Comp., ¶¶1-11, 89-92, 97, 109, 505, 508, 510-511, 513-516, 519-524, 549-555, 576-582, 603-609, 630-637, 658-664, 666-672 & 679-683.

According to Allstate, Weiner & Assoc.'s role in the conspiracy was simply to "...work[] in concert with [the other Defendants]...to engage in a scheme to defraud Allstate by submitting,

or causing to be submitted, false and fraudulent medical records, bills, and invoices (collectively, "false medical documentation") through the U.S. Mail seeking reimbursement under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3100 *et seq.,* for treatment and services that were medically unnecessary and the charges for which were not reasonable." Comp., ¶1. In support of its conclusion of Weiner & Assoc.'s knowing participation, Allstate simply repeats its unsupported assertion that Weiner & Assoc. knowingly participated in the fraudulent scheme.[1]

The facts alleged in support of Weiner & Assoc.'s participation in the alleged scheme are few and far between in Allstate's Complaint; instead, Allstate relies on the following conclusory proclamations:

➢ Defendants, "conspired to, and did in fact, defraud Allstate by perpetrating a healthcare billing fraud scheme in violation of state and federal law," the purpose of which was to, "generate claims to...collect payment from, Allstate pursuant to Michigan's No-Fault Act for the purported treatment of patients who had been (or claimed to have been) involved in motor vehicle accidents." Comp., ¶¶2 & 3;

➢ Defendants, "conspired to refer insureds for medical treatment that was not reasonably necessary for the patients' care, recovery, or rehabilitation, and the charges were not reasonable." Comp., ¶4;

➢ The scheme was, "fueled in part by referrals from personal injury attorneys, including defendant Weiner & Associates (which often obtained clients using the lawyer referral service 800-US-LAWYER), to defendants Endosurgical, Greater Lakes Anesthesia, Summit, Michigan Surgical Group, and Michigan Brain & Spine...and Dr. James, Dr. Jankowski, Dr. Zamorano, Dr. Sabit, and Dr. Quiroga..." Comp., ¶5;

➢ Each of the Medical Provider Defendants performed procedures in order to submit inflated claims, which were not reasonably necessary, were over-priced and/or not actually provided, but without allegation that Weiner & Assoc. knew this even if it were true. Comp., ¶6;

➢ *Each* of the [D]efendants "conspired with one another to accomplish and/or to further the objectives of their fraudulent scheme." Comp., ¶7;

➢ Each act or omission was undertaken by each [D]efendant intentionally Comp., ¶8;

---

[1] Apparently, if you say it twice, it becomes true in Allstate's world, and Fed. R. Civ. P. 8(a), 9(b), 12(b)(1) & 12(b)(6) cease to apply.

3

➢     Allstate paid Defendants (*although there's not a single allegation of anything paid to Weiner & Assoc.*) Comp., ¶9;

➢     "Weiner & Associates is a Michigan law firm that uses 800-US-LAWYER prominently in its advertising." Comp., ¶88;

➢     Weiner & Assoc. referred, either directly or indirectly, its automobile accident clients from 800-US-LAWYER to "certain designated medical providers, including the [Medical Provider Defendants] []"…" based on, "predetermined arrangements that ensure patients are ultimately treated by the medical facility defendants." Comp., ¶¶89-92;

➢     Defendants Angelo & Focazio, "directly benefit from the predetermined referrals from Weiner & Associates, and other law firms…to Endosurgical and Greater Lakes Anesthesia and/or to designated medical providers who in turn refer patients to and/or treat patients at Endosurgical and Greater Lakes Anesthesia." Comp., ¶97;

➢     The medical care received by the clients referred to the Medical Provider Defendants by Weiner & Assoc. … was not medically necessary. Comp., ¶¶109-110;

➢     Allstate alleges a selection of "exemplar claims" and "fraudulent mailings;" however, it fails to allege that Weiner & Assoc. referred a single one of the "exemplar" clients.  In fact, Weiner & Assoc. is not even mentioned. Comp., ¶¶158-428, 445-504;

➢     Allstate alleges "Fraudulent Billing Practices," but here again, Weiner & Assoc. is not even mentioned and there are no facts alleged to suggest that it *knew* or *participated* in these alleged Fraudulent Billing Practices. Comp., ¶¶429-504; and

➢     Finally, Allstate alleges "Specific Allegations of Mail Fraud Racketeering Activity," but once again, not a single reference to Weiner & Assoc. Comp., ¶¶505-511.

Finally, nowhere in the Complaint does Allstate allege facts that might even tend to give rise to the inference that Weiner & Assoc. knew of, or participated in, a single predicate act of mail fraud. To the contrary, Allstate generically alleges that ALL of the Defendants acted "with knowledge that the use of the mails would follow in the ordinary course of business."  Comp., ¶¶505-511.  The when, where, why or how of Weiner & Assoc.'s knowledge or participation in this scheme is left to the reader's (and the Court's) imagination. Comp., ¶¶548-555, 575-582, 602-609, 629-637 & 657-664.

Indeed, Allstate alleges only the following to support its contention of participation and knowledge on the part of Weiner & Assoc.:

➢ Weiner & Assoc. "conspired with [the Medical Provider Defendants]…through the facilitation of the operation of Endosurgical (Count II); Greater Lakes Anesthesia (Count IV); Summit (Count VI); Pacific Marketing (Count VIII); and Elite Surgical (Count X) Comp., ¶¶549-552, 576-579, 603-606, 630-633 & 658-660; and

➢ "[D]efendants were aware of this purpose [of the conspiracy], i.e. to secure the payment of No-Fault benefits to which defendants were not entitled, and "agreed to take steps to meet the conspiracy's objectives." Comp., ¶¶553, 580, 607, 635 & 662.

C. Summary of Allegations in Support of Count XI

Despite Plaintiffs' failure to allege a single false or misleading statement or omission by (or with the blessing of) Weiner & Assoc., Allstate purports to allege a claim for common law fraud against Weiner & Assoc. in Count XI. In support of this iteration of Allstate's claims, Allstate offers only the following allegations, which it characterizes as false statements, but once again, statements that were not made by or with the knowledge or participation of Weiner & Assoc.:

➢ The Defendants were rendering medically necessary treatment in compliance with the Michigan No-Fault Act, and defendants were entitled to collect No-Fault benefits. Comp., ¶¶666-667;

➢ The patients' injuries arose out of motor vehicle accidents, but no specific patient is identified that was allegedly injured in some other manner. Comp., ¶667;

➢ The misrepresentations were *intentionally* made by all of the Defendants, who knew them to be false, in furtherance of their scheme to secure No-Fault benefits to which they were not entitled. Comp., ¶669-670;

➢ Allstate reasonably relied upon the misrepresentations to its detriment. Comp., ¶¶671-672;

Notably, Weiner & Assoc. is not specifically mentioned in Count XI, and no false statements are attributed to it.

D. <u>Summary of Allegations in Support of Count XII</u>

In the complete absence of any allegation that Weiner & Assoc. received anything of value, Allstate, nonetheless, seeks recovery under the theory of unjust enrichment, in the event that its RICO claims should fail. In support, Allstate alleges only the following:

➤ Allstate paid claims under the reasonable belief that it was legally obligated to do so. Comp., ¶679;

➤ Defendants aggressively sought and voluntarily accepted the No-Fault benefits from Allstate. Comp., ¶680; and

➤ Defendants have been unjustly enriched, and it would be inequitable to permit defendants to retain these benefits. Comp., ¶¶682-683.

## III. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 12(b)(6), a Court is authorized to dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted." A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955; 167 L. Ed. 2d 929 (2007) (internal quotations and modifications omitted).

Further, this Court has been clear that "[t]hreadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 950-51 (E.D. Mich. 2009) (internal citations omitted). To be properly pled, a complaint requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 667-78; 129 S. Ct. 1937; 173 L. Ed. 2d 868 (2009) 129 S. Ct. at 1949. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotations omitted).

6

Here, to survive the instant motion, Allstate must have alleged who made the allegedly false statements, when they made the statements, how they made the statements and why the alleged statements are false, *i.e.*, why and how one might infer that Weiner & Assoc. knew of the fraudulent scheme and what it did to intentionally participate. *Heinrich v. Waiting Angels Adoption Servs.*, 668 F. 3d 393, 411 (6th Cir. 2012); *North Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 13 (1st Cir. 2009);

## IV. ARGUMENT

### A. PLAINTIFFS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND FAILED TO SATISFY THE APPLICABLE PLEADING REQUIREMENTS.

18 U.S.C. §1962(c) provides that, "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs, through a pattern of racketeering activity. *See* 18 U.S.C. §1962(c). In Counts II, IV, VI, VIII & X, Allstate contends that Weiner & Assoc. knowingly and intentionally conspired and engaged in a pattern of racketeering activity with the principals of 800-US-LAWYER and the Medical Provider Defendants to violate 18 U.S.C. §1962(c), by conspiring to defraud Allstate out of No-Fault benefits using the U.S. Mail. Comp., Counts II, IV, VI, X, XI & XIII.

To survive Weiner & Assoc.'s Motion, Allstate must allege facts – not unsupported conclusions – that establish that Weiner & Assoc. entered into an agreement with the remaining Defendants to engage in a pattern of racketeering activity, *i.e.* at least two (2) predicate acts of mail fraud, in furtherance of the alleged RICO enterprise. At a minimum, Allstate must allege facts to show that Weiner & Assoc. knew of the scheme and materially participated in the commission of the predicate acts of mail fraud. *Moon v. Harrison Piping Supply*, 465 F. 3d 719,

723 (6th Cir. 2006). In other words, Allstate must allege facts to show that Weiner & Assoc., together with the other Defendants, agreed to conduct the fraudulent scheme[2] to the detriment of Allstate, using (or causing the use of) the U.S. Mail, but with specific intent to deceive or defraud Allstate in furtherance of the RICO enterprise. *See, Jackson v. Sedgwick Claims Management*, 2010 U.S. Dist. LEXIS 22792, 115-116 (E.D. Mich. March 11, 2010) (J. Edmunds found dismissal appropriate where facts insufficiently pleaded) attached as Exhibit 2; *C & L Ward Bros. v. Outsource Solutions, Inc.*, 2012 U.S. Dist. LEXIS 109068, *12-14 ( E.D. Mich. Aug. 3, 2012), attached as Exhibit 3.

A RICO Enterprise consists of, "any individual, partnership, corporation, association, or legal entity, and union or group of individuals associated in fact." *See* 18 U.S.C. §1961(4). This "association-in-fact," however, must have at least: (a) the specific purpose of perpetuating the mail fraud scheme through a pattern of racketeering activity; (b) relationships among those associated with the RICO Enterprise; and (c) "longevity sufficient to permit these associates to pursue the [RICO] [E]nterprise's purpose." *Boyle v. U.S.*, 556 U.S. 938, 946; 129 S. Ct. 2237; 172 L. Ed. 2d 1265 (2009). A RICO enterprise exists only where the members have associated specifically to engage in the prohibited course of conduct. *Id.* Finally, RICO *conspiracy* claims, like the one alleged by Allstate, cannot survive where the plaintiff has not stated cognizable, underlying RICO claim in the first place. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 495 (6th Cir. 1989).

Mail fraud is governed by 18 U.S.C. §1341, which requires that Allstate allege facts that establish (or that at least give rise to the reasonable inference) that Weiner & Assoc. entered into

---

[2] A scheme to deceive or defraud is any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations or promises to deprive someone else of money or value. *See Heinrich v. Waiting Angels Adoption Servs., Inc.,* 668 F.3d 393 (6th Cir. 2012) (citing *U.S. v. Jamieson,* 427 F. 3d 394, 402 (6th Cir. 2005)).

an agreement to conduct the scheme with the specific intent to defraud Allstate using the U.S. Mail to deliver false or misleading materials. *Central Distributors of Beer, Inc. v. Conn*, 5 F.3d 181, 184 (6th Cir. 1993). Allstate must, at a minimum, allege: (a) the specific statements that it contends were intentionally and knowingly false or misleading at the time they were made; (b) the speaker or the party authoring and delivering the statements; (c) where and when the statements were made and delivered; and (d) exactly why and how the statements were false or misleading when they were made. *Frank v. Dana Corp.*, 547 F. 3d 564, 570 (6th Cir. 2008).

Merely proclaiming the statements or mailings as "false" or "fraudulent," as Allstate does here, is insufficient as a matter of law, even where, as here, Allstate disagrees with the medical care. Therefore, Allstate's RICO conspiracy claims in Counts II, IV, VI, VIII & X fail to meet the standard and should be dismissed. *See, e.g., C & L Ward Bros. supra*, at p. *15-16. Even if the Court were to accept Allstate's conclusory allegations as true, which it is under no obligation to do in light of their conclusory nature, "there is no specificity in any of [P]laintiffs' conclusory allegations as to how the claims submitted [to Allstate] concealed any material facts concerning the treatments, rendering any portion of those claims false or misleading. *Allstate Ins. Co. v. Advanced Health Prof'ls, P.C.*, 256 F.R.D. 49, 62 (D. Conn. 2008).

In addition to the above, Allstate's Complaint, as pleaded, is deficient, and thus must fail, for four reasons:

I. **Allstate Fails to State any Cognizable RICO Conspiracy Claim**

Allstate must allege that Weiner & Assoc. – not merely a group of defendants - violated RICO and that Allstate was injured as a result. 18 U.S.C. §1962(c). Allstate must allege: "(1) a person (2) employed by or associated with (3) an enterprise engaged in or affecting interstate commerce (4) and such person conducts or participates, directly or indirectly, in that enterprise's

affairs (5) through a pattern (6) of racketeering activity." *Hall Am. Ctr. Assocs. Ltd. Partnership v. Dick,* 726 F. Supp. 1083, 1087 (E.D. Mich 1989).

In its Complaint, Allstate proclaims that Weiner & Assoc. participated in a mail-fraud conspiracy with "defendants" to seek reimbursement for fraudulently billed medical goods and services under the Michigan No-Fault Act. Comp., ¶1-5. However, and fatal to its Complaint, Weiner & Assoc. is merely alleged to have referred clients to one or more of the Medical Provider Defendants – nothing more. According to Allstate, however, the mere referral of a client by a law firm to a medical provider is sufficient to state a claim that the law firm conspired with the provider to violate RICO, when even the insurance company disagrees with selection, quality or price of the care received. Allstate offers nothing more than its opinion that the care was medically unnecessary and unreasonably priced, but ignores the fact that the care was not rendered by, or even known to, Weiner & Assoc.

However, Allstate's opinion regarding the reasonableness of the medical care need not be accepted as true by this Court in light of the absence of any allegations of fact in support. *Ashcraft, supra* 556 U.S. at 667-78. This failure to allege facts compels dismissal of all of Allstate's claims. *Dunn v. State Farm Mut. Auto. Ins. Co.,* 724 F. Supp. 2nd 701, 706 (E.D. Mich. 2010). Specifically when, as here, a complaint contains only the insurance company's opinion that the medical care rendered to its insureds was improper, the Complaint does not contain sufficient allegations of fact, as a matter of law, to state a "plausible," cognizable fraud-based claim, and should be dismissed. *Twombly, supra,* 550 U.S. at 555; *Ashcraft, supra* 556 U.S. at 667-78. As this Court previously instructed, "courts should eliminate frivolous RICO claims at the earliest stage of litigation." *Durant v. Servicemaster Co.,* 159 F. Supp. 2d 977, 981 (E.D. Mich. 2001). This case is a perfect example of one that should be eliminated.

The absence of any fact allegations that Weiner & Assoc. knowingly made or participated in the making of statements that were false or misleading when made also compels dismissal of the Complaint. *Heinrich, supra,* 668 F. 3d 393. While intent may be alleged generally, sufficient facts to "give rise to a strong inference of fraudulent intent" must still be alleged. *AIU Ins. Co. v. Olmecs Med. Supply, Inc.,* 2005 U.S. Dist. LEXIS 29666, *24-42 (E.D.N.Y. Feb. 22, 2005), attached as Exhibit 4, (citing *Powers v. British Vita P.L.C.,* 57 F.3d 176, 184 (2d Cir.1995)). Allstate's culpable labels and unsupported conclusions cannot suffice to subject Weiner & Assoc. to the defense of a RICO conspiracy.

## II. **Allstate Fails to Allege a "Patten of Racketeering Activity" by Weiner & Assoc.**

A RICO conspiracy claim relying on mail fraud must still meet the pleading requirements. *Paycom Billing Services, Inc. v. Payment Resources International,* 212 F. Supp. 2d 732, 736 (W.D. Mich. 2002). Allstate, "must state with particularity the false statements of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact." *Blount Fin. Services, Inc. v. Walter E. Heller & Co.,* 819 F.2d 151, 152 (6th Cir. 1987). Additionally, Allstate must allege "facts to show *which* of the Defendants caused *what* statements to be mailed, together with when and how each mailing furthered the scheme." *Gotham Prints, Inc. v American Speedy Printing Ctrs., Inc.,* 863 F. Supp. 447, 458 (E.D. Mich. 1994) (*emphasis added*). Finally, Allstate must allege the existence of an agreement on the part of Weiner & Assoc. to participate in the alleged scheme in order to state viable claims.

Here, Allstate alleges no such agreement by Weiner & Assoc. To the contrary, Allstate alleges only that Weiner & Assoc. referred clients (which ones are not stated) to the Medical Provider Defendants, but it omits any facts that show that Weiner & Assoc.:  (a) made or

11

participated in a false or misleading statement that it mailed or caused to be mailed; (b) entered into any agreement to participate in any fraudulent scheme; or that it (c) knew or should have known of any fraudulent scheme.

Allstate's Complaint does not state plausible mail fraud claims because no facts are alleged that would permit the Court to infer that Weiner & Assoc. knew of the conduct alleged, much less that it should be liable for the misconduct. *Ashcraft, supra* 556 U.S. at 667-78; *Beck v. Cantor Fitzgerald,* 621 F. Supp. 1547, 1563 (N.D. Ill. 1985) (a plaintiff must allege facts that give rise to the inference that the defendant participated in the furtherance of a RICO enterprise by mail fraud or it "has no business charging RICO violations.") As one court has noted, even "[t]aking Allstate's allegations as true, there is no specificity in any of Plaintiffs' conclusory allegations that the form of Defendants' submissions to Allstate concealed the true nature of the treatments defendants rendered in such a way as to make those submissions false" *Allstate Ins. Co., supra*, 256 F.R.D at p. 62.

The same is true here.  See *McGee v. State Farm Mut. Auto. Ins. Co.,* 2009 U.S. Dist. LEXIS 60229, 17-18 (E.D.N.Y. July 10, 2009), ("In short, McGee's complaint contains only conclusory allegations of fraud, which are are insufficient to survive a motion to dismiss RICO claims, especially given the inevitable stigmatizing effect a RICO claim can have on a defendant.") (internal quotations omitted), attached as Exhibit 5; *accord Sundahl v. State Farm Mut. Auto. Ins. Co.*, 2009 U.S. Dist. LEXIS 68093 at *10-11 (E.D.N.Y. Mar. 31, 2009) (Seybert, J.) (dismissing similar RICO complaint against State Farm  because it "d[id] not explain the facts of the fraud and contain[ed] largely conclusory allegations of fraud."), attached as Exhibit 6.

### III. **Allstate Fails to Allege that Weiner & Assoc. Participated in the Alleged Conspiracy**

Assuming that it could allege the existence of a RICO conspiracy, which it has not, Allstate must still allege facts that show Weiner & Assoc. participated in that scheme to further the RICO Enterprise, *i.e.* that it participated in the operation or management of the RICO Enterprise. *See Reves v. Ernst & Young,* 507 U.S. 170, 185; 113 S. Ct. 1163; 122 L. Ed. 2d 525 (1993). In other words, Weiner & Assoc. must have played some role in directing the affairs of the RICO Enterprise, and Allstate's allegations of the mere provision of goods or services by Weiner & Assoc. is not sufficient. *Id.* Indeed, at least one Federal Circuit has held that outside professionals providing services to a RICO enterprise do not, as a matter of law, participate in the RICO enterprise. *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,* 955 F. Supp. 248, 254 (S.D.N.Y.1997).

The genesis of this conclusion is the fact that a RICO Enterprise, only exists where "a group of persons [has] associated together for the common purpose of engaging in a course of conduct." *U.S. v. Turkette,* 452 U.S. 576, 583; 101 S. Ct. 2524; 69 L. Ed. 2d 246 (1981). Here, Allstate, does not offer clear allegations of what persons and/or entities constitute the RICO Enterprise to begin with i.e. which Defendants associated for the common purpose of engaging in mail fraud. Apart from alleging that Weiner & Assoc. may have referred clients to one or more of the Medical Provider Defendants, there are no allegations of conduct or knowledge by Weiner & Assoc., whatsoever, and no allegations of which Defendants associated for the express purpose of committing mail fraud.

### IV. **Allstate Also Violates Fed. R. Civ. P. 9(b)**

Review of the Complaint reveals that Allstate's allegations do not even approach the level required to state plausible, cognizable, fraud-based claims against Weiner & Assoc. Apart

13

from Allstate's unsupported proclamation that Weiner & Assoc.:  (a) *knew* that the Medical

Provider Defendants' were committing insurance fraud through the U.S. Mail, using the RICO

Enterprise; and that (ii) Weiner & Assoc. knowingly agreed to participate in this mail fraud

scheme, Allstate fails to allege a single fact to even give rise to an inference that Weiner &

Assoc. knowingly participated in any such scheme.  Allstate's failure to allege facts – as opposed

to unsupported conclusions – is not surprising because no such facts exist.   Even less

surprisingly, Allstate leaves the following critical elements of its claims wholly un-alleged:

> That Weiner & Assoc. made (or participated in the making of) false or misleading statements of material fact (or material omissions), which it mailed or caused to be mailed to Allstate, upon which Allstate reasonably relied;

> The "who, what, where, when & how" of any of the alleged false or misleading statements or omissions of material fact by Weiner & Assoc. (or at least one in which Weiner & Assoc. knowingly participated) is conspicuous  by its absence;

> That Weiner & Assoc. received anything of value from Allstate, much less in reliance on any of the allegedly false or misleading statements at issue;

> That Weiner & Assoc. entered into any agreement whatsoever with anyone, much less an agreement related to the selection, delivery, pricing or billing for the medical goods and services allegedly provided to the automobile accident victims, none of whom is even alleged to have been referred by Weiner & Assoc.;

> That Weiner & Assoc. knew or should have known that the medical goods and services were not necessary, were of poor quality of were over-priced, assuming that they actually were;

> That Weiner & Assoc. knew or should have known that the Medical Provider Defendants would use the U.S. Mail to over-bill Allstate for care that was medically unnecessary and/or poorly delivered;

> That Weiner & Assoc. communicated with the Medical Provider Defendants about the care delivered to their patients, much less about that Weiner & Assoc. would participate in the selection, delivery or pricing to be charged for such medical care;

> That Weiner & Assoc. knew or should have known that there was common ownership among one or more of the medical facilities and the lawyer referral service, 800-US-LAWYER and/or 1800uslawyer.com; and

14

> That Weiner & Assoc. referred a single one of the patients identified in the Complaint.

Allstate, attempts to rely upon its unsupported and conclusory mantra that, "upon information and belief, in return for client referrals generated by 800-US LAWYER, law firms, including Weiner & Associates, are required to refer their clients to certain designated medical providers, including the medical facility defendants." Comp., ¶89. Like Allstate's other claims, which clients Weiner & Assoc. referred, to which of the Medical Provider Defendants it referred them to and where, when, how and why it referred these unnamed clients is omitted. Comp., ¶¶89, 158-428, 511.

Likewise, why or how the "selected examples" of mail fraud in Exhibit 9 of the Complaint are false or misleading and how they relate to Weiner & Assoc., in any way, is omitted. Instead, Exhibit 9 generically identifies claim numbers, initials, dates, billers, recipients, type of correspondence, treating doctor and the signing doctor. However, as noted above, Allstate's opinion of the price or quality of the medical treatment at issue, standing alone, is not sufficient to state a claim for fraud, and is not sufficient to state a claim for Weiner & Assoc.'s participation in an alleged RICO conspiracy.[3] Comp., ¶511; Comp. Ex. 9. Essentially, Plaintiffs attempt to take the fact that Weiner & Assoc. accepted referrals from 800-US-LAWYER and, in certain unspecified instances, referred clients to one or more of the Medical Provider Defendants into a broad, complex, and pervasive RICO conspiracy theory cause of action, which is insufficient as a matter of law.

### B. PLAINTIFFS' CONSPIRACY CLAIMS ARE REVERSE PREEMPTED BY THE MCCARRAN-FERGUSON ACT.

The McCarran-Ferguson Act, 15 U.S.C. §§ 1011, *et seq.,* states that, "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States

---

[3] *See, e.g., Allstate Ins. Co., supra,* 256 F.R.D. at 52.

15

which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). Further, "[n]o act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance... unless such act specifically relates to the business of insurance..." 15 U.S.C. § 1012(b). The Sixth Circuit construed McCarran-Ferguson as providing for "reverse preemption" in the realm of regulating the insurance business. *Genord v. Blue Cross & Blue Shield of Michigan,* 440 F.3d 802, 805-806 (6th Cir. 2006).

To determine whether a federal statute is reverse-preempted, the threshold question is whether the federal statute at issue "specifically relates to the business of insurance." If not, then the questions to be answered are whether the state statute at issue was "enacted ... for the purpose of regulating the business of insurance" and whether the application of federal statute would "invalidate, impair, or supersede" the state statue. *Kenty v. Bank One, Columbus, N.A.,* 92 F.3d 384, 392 (6th Cir. 1996); *Genord,* 440 F.3d at 805-806.

The Sixth Circuit held that "RICO does not specifically relate to the business of insurance." *Kenty,* 92 F.3d at 391. Accordingly, the answer to the first question supports the proposition that Plaintiffs' RICO claim is subject to reverse-preemption under McCarran-Ferguson.

For the purposes of reverse-preemption under McCarran-Ferguson, claimants, like the Medical Provider Defendants, under the Michigan No-Fault Act have submitted an insurance claim. *Lakeland Neurocare Ctrs. V. State Farm Mut. Ins. Co.,* 250 Mich. App. 35, 40-41 (2002). Therefore, the allegations of Allstate's Complaint involve the regulation of the performance of No-Fault insurance contracts and are subject to McCarran-Ferguson reverse-preemption.[4]

---

[4] Michigan's No-Fault Act provides "a system of compulsory insurance, whereby every Michigan motorist would be required to purchase no-fault insurance or be unable to operate a motor vehicle legally in this state." *Shavers v*

16

Allstate's RICO action will "invalidate, impair, or supersede" Michigan's No-Fault Act by adding a cause of action not contemplated by the legislature, upset the balance of remedies established by the Act and frustrate declared State policy. *See Lakeland Neurocare,* 250 Mich. App. at 37-39; *Riverview Health v. Medical Mut. Of Ohio,* 2008 U.S. Dist. LEXIS 75723 (S.D. Ohio 2008), attached as Exhibit 7. Michigan's no-fault establishes the timing and methods for the resolution of any dispute over No-Fault insurance claims, and imposing substantially different liability, particular RICO's treble damages, impairs Michigan's ability to regulate the conduct on which Plaintiffs' Complaint is based with balanced penalties. *Id.*

To conclude, allowing a RICO action to proceed in the face of Michigan's No-Fault Act will undermine both the Act's policy and purpose. The threat of treble damages could result in increased medical costs, or worse, a system where Michigan physicians would not provide complete "reasonable and necessary" services for fear that a procedure or service not challenged or investigated by an insurer within the thirty-day legislative grace period may much later be attacked as unnecessary. Therefore, because the McCarran-Ferguson Act precludes application of RICO in this case, this Court should dismiss Counts II, IV, VI, VIII and X of the Complaint.

### C. COUNTS XI & XIII OF PLAINTIFFS' COMPLAINT DO NOT COMPLY WITH THE PLEADING REQUIREMENTS OF THE FEDERAL RULES OF CIVIL PROCEDURE, ARE DUPLICATIVE, AND DO NOT STATE A SEPARATE CAUSE OF ACTION.

Counts XI and XII of Plaintiffs' Complaint allege common law fraud and unjust enrichment, respectively. Fed. R. Civ. P. 9(b) mandates that allegations of fraud be stated with

---

*Attorney General,* 267 N.W.2d 72, 77 (Mich. 1978). It also regulates any disputes over coverage, including payment delays, inequitable payment structure and high legal costs, and therefore, disputes between a medical provider and an insurer does not void the insurer's obligations under the No-Fault Act or to its insureds. *Advocacy org. For Patients & Providers v Auto Club ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999). If an insurer desires to challenge a claim, it can and should conduct an investigation under the limits of the No-Fault Act, which presents only a question of state statutory construction, constitutional law or factual uncertainty. *Ross v Auto Club Group,* 748 N.W.2d 552 (Mich. 2008).

particularity including the circumstances constituting such fraud. As noted above, Plaintiff fails to carry this burden. In particular, Allstate failed to allege a single fact concerning the following: (a) which client or clients was referred, (b) which Medical Provider Defendant received the alleged referral from Weiner & Assoc., (c) when the client was allegedly referred by Weiner & Assoc., (d) how Weiner & Assoc. referred the client or clients, or (e) why Weiner & Assoc. referred the alleged client or clients.

In addition, Allstate must allege facts that demonstrate that: (a) Weiner & Assoc. intentionally made a false representation of material fact upon which Allstate reasonably relied; and (b) Weiner & Assoc. intended that Allstate would rely to its detriment. *Dunn, supra*, 724 F. Supp. 2d at 711; *Advocacy Org. for Patients & Providers, supra,* 176 F.3d at 319. Allstate predicates Counts XI & XIII on the same alleged conduct discussed above, but does not put forth any allegations that would fairly give rise to the inference that Weiner & Assoc. *knew or should have known* of any false statement or conspiracy among the Medical Provider Defendants, much less that Weiner & Assoc. entered into an agreement to further this alleged conspiracy, or *participated* in the direction of the affairs of any RICO enterprise. This Court does not have to accept Allstate's unsupported conclusions as true or make the unwarranted and unreasonable inferences required to reach them. *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("Legal conclusions masquerading as factual allegations will not suffice.")

Even if this Court accepts Allstate's conclusions as true, they misstate the proper standard for recovery of benefits under the Michigan No-Fault Act, i.e. whether they are, "reasonably necessary to [the patient's] recovery from injuries caused by the automobile accident," and therefore, false or truthful. M.C.L.A. §500.3105, §500.3107(1)(a) & §500.3157; *See also, Dunn,*

18

724 F. Supp. 2d at 706; *Nasser v. Auto Club Ins. Ass'n*, 435 Mich 33, 48-51 (1990). As discussed above, Allstate's *opinions* simply do not give rise to any inference that anyone, much less Weiner & Assoc., knew that any of the claims were fraudulent. *Dunn*, 724 F. Supp. 2d at 706. As such, these claims should be dismissed.

## D. ALLSTATE WAIVED THEIR RIGHT TO CONTEST THE PRIORITY OF THE CLAIMS PAID.

Waiver is defined as the intentional and voluntary relinquishment of a known right. *Moore v. First Security Cas. Co.*, 224 Mich. App. 370, 376; 568 N.W.2d 841 (Mich. Ct. App 1997). Waiver may be shown "by proof of express language of agreement or inferably established by such declaration, act, and conduct of the party against whom it is claimed." *Angott v. Chubb Group of Ins. Cos.*, 717 N.W.2d 341, 345 (Mich. Ct. App 2006).

Here, pursuant to the Michigan No-Fault Act, Allstate had a statutory and contractual obligation to promptly and fairly process claims within thirty days. However, this period does not begin to run until "reasonable proof" has been provided by the claimant. Mich. Comp. Laws § 500.3142(2). If an insurer desires to challenge or investigate an amount charged, it should conduct an investigation during the thirty day period to establish a lesser amount. *See Williams v. AAA Michigan*, 646 N.W.2d 476, 485 (Mich. Ct. App 2002). If the insurer is unsatisfied with the claims, it can institute litigation in state court to challenge the claims.

Allstate knew it had a right to request reasonable proof, and should have investigated claims before payment. Instead, Allstate admits to having paid the underlying claims submitted in an amount that exceeds $170,000. *See, e.g*, Comp. ¶¶ 521-23, 526, 536, 563, 590, 617, 645,

671, 674, 677,  679. Having made these payments, Allstate waived any challenges regarding the propriety of those claims.[5]

## V.    RELIEF REQUESTED

**WHEREFORE,** Defendant WEINER & ASSOCIATES respectfully requests that this Honorable Court grant this Motion and Dismiss the Complaint, in its entirety, against Defendant Weiner & Associates and award it any costs, attorney fees, or other remedies as this Court deems as just.

Respectfully Submitted,

/s/ Ben M. Gonek
Giarmarco, Mullins, & Horton, P.C.
Attorney for Defendant
101 W. Big Beaver Rd., 10th Floor
Troy, Michigan 48084-5280
(248) 457-7152
bgonek@gmhlaw.com
P43716

Date: October 19, 2012

## CERTIFICATE OF SERVICE

On October 19, 2012,  I electronically filed this document through the ECF system which will send notice of electronic filing to the parties/attorneys of record.

/s/ Ben M. Gonek
Giarmarco, Mullins, & Horton, P.C.
Attorney for Defendant
101 W. Big Beaver Rd., 10th Floor
Troy, Michigan 48084-5280
(248) 457-7152
bgonek@gmhlaw.com
P43716

---

[5] It should also be noted that where Plaintiffs had the opportunity to litigate the claims as part of a state court matter involving Michigan's No-Fault Act, the doctrine of *res judicata* would act as a bar to Plaintiff's claims. *See, Washington v. Sinai Hosp.*, 478 Mich 412, 418; 733 N.W.2d 755 (2007).