# EXHIBIT 5



JOHN McGEE, individually, Plaintiff, -against- STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; METRO MEDICAL SERVICES, INC.; HARVEY GOLDBERG, M.D.; FRANSICO H. SANTIAGO, M.D.; ERIC M. BARON, L.A.C.; BURTON DIAMOND, M.D.; JOSEPH C. COLE, M.D.; SCOTT CORTEZ, L.A.C.; INDEPENDENT PHYSICAL EXAM REFERRALS, INC.; WENDY COHEN, M.D.; MICHAEL RUSS, M.D.; VINCENT F. AMATO, D.C.; DANIEL J. CARDELLICHIO, D.C.; SAMUEL M. ROCK, Ph.D.; PAUL MEDICAL, P.C; JOHN AND JANE DOES; ABC CORPORATIONS; and OTHER UNKNOWN ENTITIES, Defendants.

Case No. 08-CV-392(FB)(CLP)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*2009 U.S. Dist. LEXIS 60229*

July 10, 2009, Decided
July 14, 2009, Filed

**SUBSEQUENT HISTORY:** Related proceeding at *McGee v. State Farm Mut. Auto. Ins. Co.*, 684 F. Supp. 2d 258, 2009 U.S. Dist. LEXIS 107808 (E.D.N.Y., 2009) Related proceeding at *McGee v. Allstate Ins. Co.*, 2011 U.S. Dist. LEXIS 89081 (E.D.N.Y., Aug. 3, 2011)

**COUNSEL:** [*1] For Plaintiff: BRUCE S. ROSENBERG, ESQ., Rosenberg Law, P.C., Bellmore, NY.

For State Farm, Defendant: BARRY I. LEVY, ESQ., EVAN H. KRINICK, ESQ., Rivkin Radler LLP, Uniondale, NY; CARA A. ROECKER, ESQ., JONATHAN L. MARKS, ESQ., Katten Muchin Rosenman LLP, Chicago, IL.

For Metro Medical Services, Defendant: MICHAEL H. SOROKA, ESQ., Garden City, NY.

For Harvey Goldberg, Defendant: ELI UNCYK, ESQ., Uncyk, Borenkind & Nadler, LLP, New York, NY.

For Fransico H. Santiago, Eric M. Baron, Joseph C. Cole, Scott Cortez and Samuel M. Rock, Defendants: ANDREW LESLIE ZWERLING, ESQ., Garfunkel, Wild & Travis, P.C., Great Neck, NY.

For Burton Diamond, Defendant: E. GORDON HAESLOOP, ESQ., Bartlett, McDonough, Bastone & Monaghan, Mineola, NY.

For Independent Physical Exam Referrals, Defendant: JEFFREY R. NOTARBARTOLO, ESQ., Brooklyn, NY.

For Wendy Cohen, Defendant: BRIAN D. CAPLAN, ESQ., Caplan & Ross, LLP, New York, NY.

For Michael Russ, Defendant: ROBERT S. ASHER, ESQ., New York, NY.

For Vincent F. Amato, Defendant: PETER J. CREEDON, ESQ., Bayville, NY.

For Daniel J. Cardellichio, Defendant: JOHN W. LEARDI, ESQ., Buttaci & Leardi, LLC, Princeton, NJ.

**JUDGES:** FREDERIC BLOCK, Senior United States District Judge.

**OPINION BY:** Frederic Block [*2]

**OPINION**

**MEMORANDUM AND ORDER**

**BLOCK, Senior District Judge:**

In this action, plaintiff John McGee ("McGee"), a doctor, sues State Farm Mutual Automobile Insurance Co. ("State Farm"); Metro Medical Services, Inc. ("Metro") and Independent Physical Exam Referrals, Inc. ("Independent") (collectively, the "Referral Services"); and twelve individual healthcare providers (the "Providers"). He alleges civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), *18 U.S.C. §§ 1961-1968*, as well as various state-law causes of action. In his complaint, McGee alleges that the defendants conspired to fraudulently deny him reimbursement for medical procedures he had performed on his patients, thereby both injuring his business and violating his "constitutional right to practice medicine." Defendants have moved jointly to dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*.[1] The Court concludes that McGee has not stated a RICO claim and declines to assert supplemental jurisdiction over McGee's state-law claims. Accordingly, the Court grants defendants' motion,[2]

1 Defendant Burton Diamond, M.D. was the only defendant to file an answer. He seeks to join with the remaining [*3] defendants' motion to dismiss; McGee opposes this, citing *Federal Rule of Civil Procedure 12(b)*, which provides that motions to dismiss must be made *before* filing any responsive pleading. The Court finds this immaterial. In his answer, Burton raised the affirmative defense that McGee's complaint failed to state a claim, *see* Answer P 79; the Court construes Burton's attempted 12(b) motion as a motion for judgment on the pleadings pursuant to *12(c)*, and addresses it together with the remaining defendants' motions.

2 The Court notes that another judge in this district has recently dismissed a similar RICO action brought by two State Farm policyholders who were denied benefits; the plaintiffs in that action were represented by the same counsel who represents McGee and alleged the same conspiracy theory. *See Sundahl v. State Farm Mutual Auto. Ins. Co., 08-CV-1342, 2009 U.S. Dist. LEXIS 68093 (E.D.N.Y. Mar. 31, 2009) (Seybert, J.).*

## BACKGROUND

### I. New York No-Fault Insurance Law

Under New York's Comprehensive Motor Vehicle Insurance Reparation Act ("no-fault law" or "no-fault"), State Farm is required to indemnify all covered persons for the treatment of "personal injury arising out of the use or operation of a [covered] motor [*4] vehicle." *N.Y. Ins. Law § 5102(b)*. To be reimbursed, treatment must be "necessary for the treatment of injuries sustained," 11 New York Codes Rules and Regulations ("N.Y.C.R.R.") § 65.15(o)(iv); to verify a treatment's necessity, no-fault law requires that claimants "submit to a medical examination by a physician selected by, or acceptable to, the [insurer] when, and as often as, the [insurer] may reasonably require." *11 N.Y.C.R.R. § 65-1.1*. These examinations are referred to as "independent medical examinations" ("IMEs").

"Following treatment, an insured maveither pay the bill herself and seek no fault benefits directly from her insurer, or assign her right to no fault benefits to a health care provider who must apply to the insurer for the benefits." *Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co., 196 F. Supp. 2d 378, 384 (S.D.N.Y. 2002)* (citing 11 N.Y.C.R.R. § 65.15(j)(1)). If a claim is approved," [t]he insurer 'upon assignment by the applicant . . . shall pay the providers of services . . . directly.'" *Id.* (quoting 11 N.Y.C.R.R. § 65.15(j)(1)). For various reasons, a claim may not be approved, such as where the insurer determines as a result of an IME that [*5] treatment was not medically necessary.

### II. Allegations in the Complaint

McGee is a doctor who treats patients with no-fault automobile insurance policies provided by State Farm; his patients assign him their insurance claims (presumably as consideration for treatment). State Harm requires claimants to submit to IMEs; it utilizes the Referral Services to retain the Providers, along with other individual healthcare practitioners, to perform the IMEs.

McGee alleges that" [i]n order to maximize [its] profits as well as to reduce its exposure regarding [no-fault insurance] claims, State Farm conspired with the other Defendants to procure fraudulent [IME] reports" from the Providers in order to unjustly deny McGee reimbursement, Compl. P 7. Allegedly, "State Farm engaged the other Defendants with the expectations that all reports received would be favorable to the insurance carrier" and "made it known to the other Defendants that if they did not provide sufficient denials within the evaluation reports then State Farm would not use their IME services," *id.*; the complaint gives no further details as to how State Farm made this known.

McGee alleges that, pursuant to this scheme, the Providers "sign [*6] or authorize their names to be applied to boilerplate medical evaluation reports," *id.* P 17; these reports are then used by State Farm to "create fraudulent denials of reimbursement[,]" *id*, P 34. McGee alleges that the reports are "scientifically dishonest" in that they falsely conclude that McGee's treatments were

medically unnecessary when, in fact, the treatments were necessary. *Id*. P 53.[3]

> [3] McGee also alleges that each IME report was fraudulent (1) because the term "independent medical examination" *itself* is false and misleading, as the Providers' exams are *not* truly independent; and (2) because they "materially misrepresented . . . [that] there was no Doctor/Patient Privilege created by virtue of the examination (when in fact there was and is a doctor patient relationship) . . . ." Compl. P 63. The Court summarily rejects these assertions. As for the former, the term "independent medical examination" is commonly used, *see* State Farm Mem. of Law at 11 n.10 (collecting cases), and McGee does not allege that defendant's use of the term "independent" damaged him in any way. As for the latter, it is well-established under New York law that" [a] physician-patient relationship does not [*7] exist where the examination is conducted solely for the purpose of rendering an evaluation for an insurer." *Savarese v. Allstate Ins. Co., 287 A.D.2d 492, 731 N.Y.S.2d 226, 226 (2d Dep't 2001)*.

According to McGee," [t]he Defendants' scheme began as early as December 1998 and has continued uninterrupted since that Dime." *Id*. P 63.[4] As a result of this alleged conspiracy, McGee claims that he was unjustly "den[ied] payment for [his] professional services" in an amount greater than one million dollars, and "prevented . . . from providing appropriate medical care to [his] patients," *id*. P 19, in violation of his "constitutional rights to practice medicine[,]" *id*. P 34.

> [4] Confusingly, however, the complaint alleges that State Farm first asked defendant Independent Physical Exam Referrals, Inc. to "furnish . . . false medical reports" "on or before [] May 22, 1990," Compl. P 67 (emphasis added) -- over eight years prior to the date when McGee claims the "scheme began," *id*. P 63.

McGee also alleges that, in the course of this conspiracy, the defendants have violated a variety of New York laws and regulations. For example, he alleges that "State Farm pays the [Referral Services] a fee in excess of the amount [*8] established in the New York No-Fault Fee Schedule[,]" *id*. P 18; that State Farm and the Referral Services, which supposedly "controlled the [Providers]" but are owned by non-physicians, are practicing medicine without a license, *id*. P 19; and that certain Providers who lack M.D. or D.O. degrees have been conducting IMEs in violation of New York no-fault law, which requires IMEs to be provided by "physicians," *id*. PP 43-44.

## DISCUSSION

### I. Standard of Review

"To survive a motion to dismiss [pursuant to *Rule 12(b)(6)*], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted), "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly, 550 U.S. at 557*). "Although for the purposes [*9] of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id*. (quoting *Twombly, 550 U.S. at 555*).

### II. Article III Standing

Defendants argue that McGee lacks standing to bring this action. Standing is a "threshold issue . . . [and] 'an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Horne v. Flores, 129 S. Ct. 2579, 174 L. Ed. 2d 406, 2009 WL 1789470, at *8 (2009)* (quoting *Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351, 360 (1992))*. "To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Id*. "[I]n all standing inquiries, the critical question is whether [the plaintiff] has 'alleged such a personal stake in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction.'" *Id*. (quoting *Summers v. Earth Island Institute, 129 S.Ct. 1142, 1148-49, 173 L. Ed. 2d 1 (2009))*.

According to defendants, McGee has pleaded no concrete injury to his own interests, as opposed to those of his [*10] patients. They correctly note that McGee cannot base standing upon defendants' alleged infringement of McGee's so-called "constitutional right to practice medicine." This is because there is no due process right to practice one's profession free of any restraints, *see Conn v. Gabbert, 526 U.S. 286, 291-92, 119 S. Ct. 1292, 143 L. Ed. 2d 399 (1999)* (stating that due process is violated only by the "complete prohibition of the right

to engage in a calling"), and more importantly, because the *Fourteenth Amendment* applies only to *state* actors, and defendants are private entities. See *Georgia v. McCollum, 505 U.S. 42, 63, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992)*.

Defendants also argue that McGee has no standing on the basis of any financial losses because he was not, in fact, the assignee of his patients' insurance claims. However, McGee's complaint alleges that "*Plaintiff, John McGee*[,] . . . was [the] assignee of [his patients'] policy benefits," Compl. P 1; "[w]hen standing is challenged on the basis of the pleadings, [a court must] 'accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *United States v. Vazquez, 145 F.3d 74, 81 (2d Cir. 1998)* (quoting *Warth v. Seldin, 422 U.S. 490, 501, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975))*.

The [*11] defendants note that Exhibit A to the complaint consists of five denial-of-claim forms, each of which has the "No" box check-marked in response to the question whether the claim was brought "[a]s [a]ssignee." While it is true that "allegations cannot survive a motion to dismiss where they are contradicted by [a] plaintiff's own exhibits," State Farm Mem. of Law at 22 (quoting *Koulkina v. City of New York, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008))*, these five forms do not foreclose the possibility that McGee was the assignee of *at least some* of his patients' insurance claims and simply attached the wrong forms. At this stage, the Court must give McGee the benefit of the doubt. *Cf. Am. Med. Ass'n v. United Healthcare Corp., No. 00-Civ.-2800(LMM)(GWG), 2002 U.S. Dist. LEXIS 20309, 2002 WL 31413668, at \*2 (S.D.N.Y. Oct. 23, 2002)* ("[D]efendants argue that Provider Plaintiffs have not sufficiently alleged facts to support the assertion that they have received such assignments . . . . The Court shares defendants' concern, but feels that the more appropriate way to obtain this information and resolve this issue is through the discovery process."). Accordingly, the Court finds that McGee's allegations create standing. [*12] [5]

> 5  In their separate memorandum of law, two defendants argue that the actual assignee was not McGee as an individual, but rather McGee's professional corporation, and that his professional corporation is thus the only entity with standing to sue. However, McGee's complaint clearly states that the claims were assigned to *him as an individual*. See Compl. P 1 ("Plaintiff, John McGee . . . was . . . assignee of the aforementioned insureds' policy benefits.").

## III. Civil RICO

McGee asserts a claim under *18 U.S.C. § 1964(c)*, the civil RICO statute, "which provides . . . that '[a]ny person injured in his business or property by reason of a violation of *section 1962* of this chapter may sue [in federal court] . . . .'" *Bridge v. Phoenix Bond & Indem. Co., 128 S.Ct. 2131, 2137, 170 L. Ed. 2d 1012 (2008)*. [6] *Section 1962*, in turn, "contains RICO's criminal prohibitions," including *§ 1962(c)*, which "makes it 'unlawful for any person employed by or associated with' an enterprise engaged in or affecting interstate or foreign commerce 'to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Id. at 2137-38*. "The term 'racketeering activity' [*13] is defined to include a host of so-called predicate acts," *id. at 2138*, including "any act which is indictable under . . . *[18 U.S.C]* section 1341 (relating to mail fraud), [or] section 1343 (relating to wire fraud) . . . ." *18 U.S.C. § 1961(1)(B)*.

> 6  While it is clear that McGee pleads a *substantive* civil-RICO violation under *18 U.S.C. § 1962(c)*, it is unclear whether he also intends to plead a separate RICO *conspiracy* violation under *18 U.S.C. § 1962(d)*. However, "[t]o establish the existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 244 (2d Cir. 1999)* (internal quotation marks omitted). As explained below, the acts that defendants allegedly agreed to commit do not, as a matter of law, constitute a violation of RICO's substantive provisions; thus, no RICO conspiracy could exist. The Court, therefore, deems any *§ 1962(d)* claim dismissed.

McGee's complaint alleges that "an enterprise existed such that [defendants] associated together for the common purpose of defrauding Plaintiff of payment," Compl. P 51, by means of a "pattern of racketeering [*14] activity involv[ing] in excess of fifty (50) predicate acts [of] mail fraud and/or wire fraud[,]" *id*. P 53, which utilized "the United States mail and/or other private express mail services, interstate telephone and telefax lines, cellular phones and internet transmission[,]" *id*. P 56.

Defendants' primary arguments in support of dismissal are: (1) that McGee has failed to plead the predicate acts of mail fraud and wire fraud with sufficient particularity; (2) that, in any event, the conduct McGee alleges does not amount to mail or wire fraud as a matter of law; (3) that McGee has failed to plead a RICO "enterprise"; and (4) that McGee has not exhausted his state-law remedies, and his actual damages are therefore not yet "clear and definite." Because the Court agrees

with the first two arguments, dismissal is required, and the Court need not reach the remaining two.[7]

[7] The Court notes in passing, however, that the Supreme Court's recent decision in *Boyle v. United States, 129 S. Ct. 2237, 2243, 173 L. Ed. 2d 1265 (2009)*, casts doubt on defendants' argument that McGee has not properly pleaded the existence of an "association-in-fact" enterprise. *Boyle* establishes a low threshold for pleading such an enterprise, [*15] requiring only "a group of [entities] associated together for a common purpose of engaging in a course of conduct," *id. at 2244*; contrary to defendants' suggestion, pleading a "hierarchical structure" or a "chain of command" is not necessary, *id. at 2245*.

### A. The Alleged Predicate Acts Are Not Pleaded With Particularity

As stated above, the predicate acts upon which McGee bases his RICO claim are mail fraud and wire fraud. Mail fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud," uses the mail "for the purpose of executing such scheme or artifice . . . ." *18 U.S.C. § 1341*. Wire fraud occurs whenever a person, "having devised or intending to devise any scheme or artifice to defraud, "transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice . . . ." *18 U.S.C. § 1343*.

In a RICO action, "all allegations of fraudulent predicate acts [] are subject to the heightened pleading requirements of *Federal Rule of Civil Procedure 9(b)*." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 178 (2d Cir. 2004)*; [*16] *see also In re Sumitomo Copper Litig., 995 F. Supp. 451, 455 (S.D.N.Y. 1998)* ("*Rule 9(b)* has great urgency in civil RICO actions." (internal quotation marks omitted)). In other words, to assert a RICO claim based upon mail or wire fraud, a "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d. Cir. 1993)*; *accord Bauman v. Mount Sinai Hosp., 452 F. Supp. 2d 490, 503 (S.D.N.Y. 2006)* (dismissing RICO claim where complaint "omit[ted] the who, what, when, where and how of the alleged fraud." (internal quotation marks omitted)).

McGee's complaint falls far short of this standard. It does not identify any specific fraudulent statement from any IME report (for example, a false statement by one of the Providers that a specific patient was not injured or that specific treatment was not medically necessary).[8] Aside from November 25, 2002 and May 22, 1990 -- the dates on which State Farm allegedly first contacted Metro and Independent -- the Complaint specifies no dates of any [*17] uses of the interstate mails or wires; in fact, McGee loosely alleges throughout his complaint that the defendants contacted each other by means of the mails "and/or" the wires, without specifying precise methods of communication. The complaint does not specify where any of these communications were made. *See Cordero-Hernandez v. Hernandez-Ballesteros, 449 F.3d 240, 244 (1st Cir. 2006)* (stating that a complaint alleging mail or wire fraud must "go beyond a showing of fraud and state the time, place and content of the alleged mail and wire communications perpetrating that fraud").

[8] The exhibits McGee attached to his complaint do not help him. He has included four IME reports which allegedly constitute a "representative sample." Compl. P 62. However, each of these reports concludes that McGee's medical treatment *was necessary*. *See* Compl., Ex. C. This is inconsistent with the fraudulent scheme which McGee alleges; therefore, the reports cannot satisfy *Rule 9(b)*'s requirement that the alleged *fraudulent* statements be pleaded with particularity.

In short, McGee's complaint contains only "conclusory allegations" of fraud, which are "are insufficient to survive a motion to dismiss RICO claims, [*18] especially given the inevitable stigmatizing effect a RICO claim can have on a defendant." *Jones v. Nat'l Comm'cn and Surveillance Networks, 409 F. Supp. 2d 456, 474 (S.D.N.Y. 2006)* (internal quotation marks and citations omitted); *accord Sundahl v. State Farm Mut. Auto. Ins. Co., 08-CV-1342(JS)(WDW), 2009 U.S. Dist. LEXIS 68093 at *10-11 (E.D.N.Y. Mar. 31, 2009)* (Seybert, J.) (dismissing similar RICO complaint against State Farm because it "d[id] not explain the facts of the fraud and contain[ed] largely conclusory allegations of fraud.").

### B. The Alleged Predicate Acts Do Not Constitute Mail or Wire Fraud as a Matter of Law

McGee's allegations of mail fraud and wire fraud suffer from a more fundamental flaw: establishing mail or wire fraud requires showing "a scheme or artifice to defraud or obtain money by means of false pretenses, representations, or promises," *Update Traffic Sys., Inc. v. Gould, 857 F. Supp. 274, 282 (E.D.N.Y. 1994)*, and such a showing fundamentally requires that someone be *deceived*. *See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1415 (3d Cir. 1991)* ("Under the mail fraud statute, a scheme or artifice to defraud must involve some sort of fraudulent misrepresentations or omissions

[*19] reasonably *calculated to deceive* persons of ordinary prudence and comprehension." (internal quotation marks and citations omitted) (emphasis added)).

"[A]bsent any element of deception, allegations of [wrongful] conduct simply do not constitute a 'scheme to defraud.'" *A. Terzi Prods., Inc. v. Theatrical Protective Union, 2 F. Supp. 2d 485, 500 (S.D.N.Y. 1998)*. "[N]ot every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud . . . . Rather, the scheme must be intended to *deceive* another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 791 (1st Cir. 1990)* (emphasis in original) (internal citations omitted); *see also Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 528-29 (3d Cir. 1998).* [9]

> 9   The Supreme Court recently held that a plaintiff asserting a RICO claim predicated on mail fraud need not show first-party reliance as an element of her claim -i.e., does not need to show that the *plaintiff herself* was in fact deceived. *See Bridge, 128 S. Ct. at 2145*. This does not change the fact [*20] that mail fraud (and wire fraud) requires conduct calculated to deceive *someone* -- whether the plaintiff herself or a third party. *See id. at 2144* ("Of course, none of this is to say that a RICO plaintiff who alleges . . . mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." (internal quotation marks omitted) (emphasis in original)).

In the conspiracy which McGee alleges, however, none of the defendants' conduct is calculated to deceive anyone. The Providers' allegedly falsified IME reports are not calculated to deceive State Farm because State Farm ordered the falsification in the first place. Neither are the reports calculated to deceive McGee: he knows full well what his own patients' true condition is, and defendants' reports are not intended to convince him otherwise. Nor are the reports calculated to deceive McGee's patients, who apparently do not even receive them, and who are aware of their own injuries in any event. In sum, while defendants' alleged conduct is dishonest and unfair, no one is intended to be duped or taken in, Thus, while this alleged scheme may violate some other state or federal law or constitute a breach of contract, [*21] it is not redressable under a mail-or wire-fraud theory.

### C. *Dismissal With Prejudice Is Warranted*

"Ordinarily, dismissal [pursuant to *Rule 12(b)(6)*] is without prejudice; however, upon a determination that amendment would be futile, the Court in its discretion may dismiss with prejudice." *Arrow Commc'n Labs., Inc. v. John Mezzalingua Assocs., Inc., 5:05-CV-1456, 2006 U.S. Dist. LEXIS 85913, 2006 WL 3435318, at *1 (N.D.N.Y. Nov. 28, 2006)*; *see also Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 89 (2d Cir. 1999)* (stating that "the district court was not obliged to grant plaintiffs leave to amend their [RICO] complaint" where "there [was no] showing as to how plaintiffs might amend their complaint to cure their pleading deficiencies, especially in light of the insufficiency of facts to support a claim.").

Even if McGee had pleaded fraud with particularity, the alleged "conspiracy" at the heart of his complaint cannot be shoehorned into a mail- or wire-fraud claim. As re-pleading would not change this fundamental deficiency, amendment would be futile; accordingly, McGee's RICO claims based upon mail fraud and wire fraud should be dismissed with prejudice. *Accord Sundahl, 08-CV-1342, slip op. at 18* (dismissing [*22] similar RICO claims against State Farm with prejudice because "it appear[ed] from the Complaint itself" that "an amendment would be futile").

### IV. State Law Claims

Pursuant to *28 U.S.C. § 1367(c)(3)*, a district court may, "in its discretion, . . . decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." *Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998)*. The Supreme Court has counseled that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988)*. This is such a case; accordingly, the Court declines to exercise jurisdiction over McGee's state-law claims and dismisses them without prejudice.

### CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss. McGee's RICO claims are dismissed with prejudice; his state-law claims are dismissed without prejudice.

**SO ORDERED.**

/s/ FB

FREDERIC BLOCK [*23]

Senior United States District Judge

Brooklyn, New York

July 10, 2009