# EXHIBIT 6



GREGORY SUNDAHL, individually and JESSE SUNDHAL, individually and on behalf of all others similarly situated, Plaintiffs, -against- STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, PREFERRED CONSULTING SERVICES, INC., a New York Corporation, HOOPER EVALUATIONS, INC. a/k/a D&D-HOOPER EVALUATIONS, a New York Corporation, JOHN AND JANE DOES, ABC CORPORATIONS, and OTHER UNKNOWN ENTITIES, Defendants.

08-CV-1342 (JS)(WDW)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

2009 U.S. Dist. LEXIS 68093

March 31, 2009, Decided
March 31, 2009, Filed

**COUNSEL:** [*1] For Plaintiffs: Bruce Rosenberg, Esq., H. Alexis Rosenberg, Esq., Rosenberg Law, P.C., Bellmore, NY.

For State Farm Mutual Automobile Insurance Company, Defendant: Sheila L. Birnbarum, Esq., Bert L. Wolff, Esq., Skadden, Arps, Slate, Meagher & Flom, LLP, New York, NY; Evan H. Krinick, Esq., Barry I. Levy, Esq., Rivkin Radler, LLP, Uniondale, NY.

For Hooper Evaluations, Defendant: John P. Campbell, Esq., Schenck, Price, Smith & King, LLP, New York, NY.

For Preferred Consulting Services, Inc., Defendant: Robert J. Hindman, Esq., Ahmuty, Demers & McManus, Esqs., Albertson, New York.

**JUDGES:** Joanna Seybert, United States District Judge.

**OPINION BY:** Joanna Seybert

**OPINION**

*MEMORANDUM & ORDER*

SEYBERT, District Judge:

On April 3, 2008, Gregory Sundahl and Jesse Sundahl (collectively, "Plaintiffs" or the "Sundahls") commenced this action against State Farm Mutual Automobile Insurance Company ("State Farm"), Preferred Consulting Services, Inc. ("Preferred"), Hooper Evaluations, Inc., a/k/a D&D-Hooper Evaluation ("D&D"), John and Jane Does, ABC Corporations, and other entities (collectively the "Defendants"). [1] Plaintiffs allege violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), *18 U.S.C. § 1962 et seq.*, [*2] as well as state law claims of fraud, misrepresentation, and deceit, breach of the covenants of good faith and fair dealing, breach of contract, and unjust enrichment.

> 1   Plaintiffs filed the Complaint on behalf of themselves and a c lass of similarly situated persons that has not yet been certified

Pending before this Court are Defendants' motions to dismiss the action on the pleadings pursuant to *Federal Rules of Civil Procedure 12(b)(6)*. [2] For the reasons set forth herein, Defendants' motions to dismiss are GRANTED.

> 2   Because the Defendants move to dismiss Plaintiffs' Rico claims on the same grounds, the Court addresses the arguments in the three separate motions with respect to the RICO allegations in tandem.

*BACKGROUND*

The facts, as alleged by Plaintiffs and regarded as true for the purposes of this motion, are as follows.

Plaintiffs are individuals residing in New York who were eligible injured insureds under State Farm's automobile insurance Policy Form 9332P.6. Defendants D&D and Preferred procure healthcare providers who conduct medical examinations of State Farm's eligible injured persons.

Plaintiff Gregory Sundahl purchased an automobile insurance policy from Defendant State Farm, [*3] which named him as the insured. On January 9, 2006, Plaintiffs Gregory and Jesse Sundahl were involved in an automobile accident.

Following their accident, Plaintiffs each applied to State Farm for economic loss benefits under Gregory's policy. On or about April 7, 2006, May 5, 2006, June 1, 2006, and June 9, 2006, Preferred sent letters to Gregory Sundahl on behalf of State Farm informing Gregory Sundahl that he must attend seven independent medical examinations ("IMEs") with healthcare providers chosen by Preferred.

On or about December 18, 2006, State Farm requested that D&D send a similar letter to Jesse Sundahl.

The letter to Jesse Sundahl stated,

> UNDER THE PROVISION OF THE NEW YORK NO-FAULT LAW, IF THIS SCHEDULED APPOINTMENT IS NOT KEPT, NO-FAULT BENEFITS MAY BE DENIED. A condition of the New York State No-Fault Law states: "The eligible injured person shall submit to medical examination by physicians selected by, or acceptable to, The Company, when, and as often as, the Company may reasonably require. You are entitled to reimbursement for any loss of earnings and reasonable transportation expenses incurred in complying with this request."

Comp. P 53.

Plaintiffs attended the medical [*4] examinations. As a result of the medical examiners' findings, State Farm denied the Sundahls' request for benefits. Plaintiffs allege that the examinations were fraudulent and maintain that the healthcare providers submitted materially false reports to Defendants to enable State Farm to reduce or deny Plaintiffs' economic loss benefits. The Sundahls allege that they continue to experience medical difficulties as a result of State Farm's denial of benefits.

Plaintiffs allege that State Farm, acting through Preferred and D&D (collectively "the IME companies"), engaged in a pattern of racketeering that includes over fifty predicate acts that directly affect the named Plaintiffs and possibly over one hundred other Plaintiffs not yet identified. Plaintiffs specifically allege that State Farm and the IME companies used the mails and interstate wires in order to systematically and fraudulently ensure the denial of eligible insured's claims.

Plaintiffs allege that State Farm instructed the IME companies to represent the required medical examinations as "independent medical examinations," even though this term does not appear in the New York State No Fault Law, Defendants misrepresented the nature [*5] of the medical examinations by referring to them as "independent," and State Farm conspired with the IME companies to deny or reduce Plaintiffs' claims. Plaintiffs contend that, with the knowledge and agreement of State Farm, the IME companies instructed medical examiners to "state that medical conditions were either non-existent, or did not occur, and used forged, contrived and altered written medical reports to create a basis for denial . . . ." (Comp. PP 115, 132.)

As a result, Plaintiffs allege that the Sundahls and potentially over one hundred other State Farm eligible injured persons have been denied economic loss benefits to which they were entitled, and have suffered damages totaling over five million dollars ($ 5,000,000).

*DISCUSSION*

I. *Standard of Review*

A. *Rule 12(b)(6)*

On a motion to dismiss pursuant to *Rule 12(b)(6)*, a plaintiff must satisfy a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)*. The Complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*. [*6] The Court does not require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." *Id. at 1974*.

In applying this standard, the district court must accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of Plaintiff. *See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006)*; *Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005)*. Additionally, the Court is confined to "the allegations contained within the four

corners of the complaint." *Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998)*. However, the Court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference" as well as any document on which the complaint relies heavily. *Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002)*. "Of course, it may also consider matters of which judicial notice may be taken under *Fed. R. Evid. 201*." *Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991)*.

II. *Plaintiffs' Rico Claims*

"In civil RICO suits, a plaintiff must first satisfy the elements of *§ 1962*, [*7] the criminal RICO statute." *Allstate Ins. Co. v. Ahmed Halima, No. 06-CV-1316, 2009 U.S. Dist. LEXIS 22443, at *12 (E.D.N.Y. Mar. 19, 2009)* (citing *City of New York v. Smokes-Spirits.com, Inc., 541 F.3d 425, 439 (2d Cir. 2008)*). Section *1962(c)* makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." To establish a RICO violation under *Section 1962*, a Plaintiff must show "four elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Smokes-Spirits.com, 541 F.3d at 439* (quoting *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985))*.

In addition to satisfying the elements of the criminal RICO statute, a plaintiff bringing a civil RICO claim pursuant to *Section 1964* must also show "(2) injury to the plaintiff's 'business or property,' and (3) that such injury was "by reason of the substantive RICO violation." *Smokes-Spirits.com, Inc., 541 F.3d at 439* (internal quotations [*8] omitted).

Plaintiffs allege that Defendants violated *18 U.S.C. § 1962(c)* by engaging in an ongoing scheme to deny economic loss benefits to eligible injured persons under State Farm insurance policies.

Plaintiffs' claim of a violation of RICO as well as the RICO conspiracy claim must be dismissed. First, the Complaint fails to comply with *Fed. R. Civ. P. 9(b)*. Second, Plaintiffs have failed to plead the requisite "pattern of racketeering activity." Finally, in the absence of allegations demonstrating a pattern of racketeering activity, the conspiracy claim cannot survive. In limiting the discussion to these three areas, the Court expresses no view regarding the merits of Defendants' other arguments in support of its motion to dismiss.

A. *Failure to Plead Sufficient Predicate Acts*

"Like all averments of fraud, a plaintiff must plead wire and mail fraud with the requisite particularity demanded by *Fed. R. Civ. P. 9(b)*." *Lichtenstein v. Reassure Am. Life Ins. Co., No. 07-CV-1653, 2009 U.S. Dist. LEXIS 23656, at *34 (E.D.N.Y. Mar. 23, 2009). Fed. R. Civ. P. 9(b)* requires that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." *Fed. R. Civ. P. 9(b)*. [*9] The Supreme Court has recently held that unlike common law fraud, a plaintiff pleading mail or wire fraud "need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations." *Bridge v. Phoenix Bond & Indemnity Co., U.S. , 128 S. Ct. 2131, 2145, 170 L. Ed. 2d 1012 (2008)*.

Allegations of mail or wire fraud, such as those set forth in the Complaint, must specify (1) the content of the communication; (2) the parties involved; (3) where and when the communications took place; and (4) why the communications were fraudulent. *Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999); Mills v. Polar Molecular Corp., 12 F.3d 1170, 1176 (2d Cir. 1993); Amalgamated Bank of New York v. Marsh, 823 F. Supp. 209, 217 (S.D.N.Y. 1993)*. A plaintiff who brings claims of fraud against multiple defendants must meet these requirements as to each defendant. *DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)*. Additionally, "plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Moore, 189 F.3d at 173* (quotation omitted).

Here, Plaintiffs [*10] allege that

> Defendants and each of them devised or intended to devise a scheme or artifice to defraud Plaintiffs and potentially over one hundred (100) other insured policyholders and in doing so used the U.S. Mail, DHL and/or other private or commercial interstate carriers to: (a) gain access to Plaintiffs to perform medical exams; (b) procure scientifically dishonest medical reports in order to deny future medical coverage; (c) alter IME reports originally containing findings for continued treatment; (d) conduct sham repeat or multiple insured medical exams for the purpose of procuring medical report falsely finding lack of need for future medical treatment; (e) conceal the enterprise and pattern of racketeering.

Comp. P 84.

2:12-cv-13500-GER-DRG Doc # 52-6 Filed 10/19/12 Pg 5 of 8 Pg ID 523

Page 4
2009 U.S. Dist. LEXIS 68093, *

Although Plaintiffs identify five letters, sent on April 7, 2006, May 5, 2006, June 1, 2006, June 9, 2006, and December 18, 2006 by the IME companies to Plaintiffs, Plaintiffs failed to plead with particularity why these communications were fraudulent. The sum of Plaintiffs' wire fraud allegations mirror the mail fraud allegations and similarly fail to satisfy the requirements of *Rule 9(b)* since they do not explain the facts of the fraud and contain largely conclusory [*11] allegations of fraud.

In sum, Plaintiffs maintain that the alleged mailings contained the following fraudulent communications:

> (a) the IME evaluations were fraudulent as there is no such examination as an Independent Medical Examination pursuant to mandatory New York State No-Fault Law or the private insurance contract with STATE FARM; (b) the IME evaluations were designed and created to facilitate the denial of basic economic loss benefits of STATE FARM'S eligible injured persons; (c) the reports materially misrepresented that they were independent in nature rather than being appropriately represented as "insurer medical examinations;" d) the reports, and the notices issued in conjunction with procuring them, intentionally mislead STATE FARM'S eligible injured persons to believe there was no Doctor/Patient Privilege created by virtue of the examination when in fact there was, and is, a doctor patient relationship, and there was no informed consent obtained from the patient to be subjected to the physical evaluation; and e) the reports were submitted by the Defendants in support of denying further benefits to its eligible injured persons, as well as reducing the value of personal injury [*12] claims belonging to STATE FARM eligible injured persons. In fact, the sole purpose for which the 'IMEs' were ordered, performed and reported was to financially enrich the Defendants.

Comp. P 87.

Plaintiffs' allegations that the IME evaluations were fraudulent because there is no "such examination as an Independent Medical Examination pursuant to mandatory New York State No-Fault Law or the private insurance contract with State Farm" and that the "reports materially misrepresented that they were independent in nature rather than being appropriately represented as 'insurer medical examinations'" are illogical.

Plaintiffs take great offense at the term "Independent Medical Examination" and maintain that its use is fraudulent; according to Plaintiffs, Defendants should have used the term "insurer medical examinations." Plaintiffs have not alleged whatsoever how the "Independent Medical Examination" term is fraudulent or misleading. Courts in New York have repeatedly referred to such examinations as "Independent Medical Examinations." *See Rhone v. United States, No. 04-CV-5037, 2007 U.S. Dist. LEXIS 83322, at *5 (S.D.N.Y. Nov. 8, 2007)* ("Dr. Kenneth Falvo performed an independent medical examination [*13] of Rhone at the request of his insurer, GEICO."); *DeJesus v. Rafael, No. 00-CV-5137, 2003 U.S. Dist. LEXIS 9488 (S.D.N.Y. June 4, 2003)* (referring to the plaintiff's various independent medical examinations); *Hosp. for Joint Diseases v. Allstate Ins. Co., 5 A.D.3d 441, 773 N.Y.S.2d 427, 428 (App. Div. 2d Dep't 2004)*. In fact, the New York State Insurance Department itself utilizes this term. *See* May 9, 2001 Press Release, N.Y.S. Ins. Dep't (referring to a new package providing "a variety of new options that will result in lower premiums for New York's auto insurance consumers, as well as a comprehensive set of new consumer rights and protections concerning the no-fault *independent medical examination system*") (emphasis added).

Plaintiffs argue that "[e]vidence of the court being mislead does not establish that 'Independent' medical exams exist in New York No Fault Law. New York No Fault Law Regulation 68 states that an IME is an insured's medical examination **NOT** an 'independent' examination." (Pls.' Opp. 21). The Court rejects this argument. Plaintiffs have failed to show what about the term "Independent Medical Exam" is fraudulent, or why the term "insurer medical examinations" is more accurate. [*14] To the extent that Plaintiffs argue that the term is fraudulent because the examinations were not independent, Plaintiffs have failed to plead any facts which, even after drawing all inferences in favor of Plaintiffs, would show that the examinations were not independent.

Next, Plaintiffs argue that the various mailings "intentionally mislead State Farm's eligible injured persons to believe there was no Doctor/Patient Privilege created by virtue of the examination when in fact there was, and is, a doctor patient relationship." Again, Plaintiffs fail to allege anything fraudulent. Courts in this state have held that "[a] physician-patient relationship does not exist where the examination is conducted solely for the purpose of rendering an evaluation for an insurer." *Bazakos v. Lewis, 56 A.D.3d 15, 864 N.Y.S.2d 505, 509 (N.Y. App. Div. 2d Dep't 2008)* (quoting *Savarese v Allstate Ins. Co., 287 A.D.2d 492, 731 N.Y.S.2d 226, 227 (N.Y. App. Div. 2d Dep't 2001)*. However, there are times where a

2:12-cv-13500-GER-DRG Doc # 52-6 Filed 10/19/12 Pg 6 of 8 Pg ID 524

Page 5
2009 U.S. Dist. LEXIS 68093, *

doctor-patient relationship may be established; "such a relationship may be implied where the IME physician affirmatively advises the patient." *Lawliss v. Quellman, 38 A.D.3d 1123, 832 N.Y.S.2d 328, 329 (App. Div. 3d Dep't 2007).* However, Plaintiffs [*15] have not shown that such a relationship developed here, nor is it relevant to Plaintiffs vague allegations of fraud. Plaintiffs have not pled with particularity any frauds pertaining to this doctor-patient relationship.

Plaintiffs' allegations of fraudulent reports "submitted by the Defendants in support of denying further benefits to its eligible injured persons, as well as reducing the value of personal injury claims belonging to STATE FARM eligible injured persons" is equally unavailing. Plaintiffs again have failed to plead with particularity exactly what was fraudulent about these reports. Plaintiffs do not allege any words, statements, or information in the reports that Plaintiffs claim are fraudulent, nor have Plaintiffs alleged any statements or information to show that "Defendants Preferred and D&D along with other unknown IME companies were engaged in the illegal practice of medicine." (Pls.' Opp. 15.) *See Lichtenstein, 2009 U.S. Dist. LEXIS 23656 at *21* (rejecting Plaintiff's allegation of a "broad [*16] scheme by the insurer . . . to defraud their insureds by kicking back a portion of the insured's denied benefits to the claims investigators as a way to encourage denials of coverage" for failure to meet the particularity requirements of *Rule 9(b)*). Simply put, "[P]laintiffs do not provide a single factual allegation to support [these] conclusory assertions." *Carmona v. Spanish Broad. Sys., No. 08-CV-4475, 2009 U.S. Dist. LEXIS 26479, at *17 (S.D.N.Y. Mar. 30, 2009)*

To the extent that Plaintiffs allege that the mails or wires were used in furtherance of a scheme to defraud, "*Rule 9(b)* requires only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." *In re Sumitomo Copper Litig., 995 F. Supp. 451, 456 (S.D.N.Y. 1998).* Nonetheless, Plaintiffs' Complaint fails to delineate what the specific circumstances are giving rise to this alleged scheme to defraud. Conclusory allegations of a scheme to defraud are insufficient. *See United States Fire Ins. Co. v. United Limousine Serv., 303 F. Supp. 2d 432, 454 (S.D.N.Y. 2004).*

B. Failure to Allege a "Pattern of Racketeering Activity"

Even if the [*17] Court were to find that Plaintiffs adequately alleged predicate acts, the Court finds that the Complaint fails to plead adequately a "pattern" of racketeering activity. RICO defines a "pattern of racketeering activity" as "at least two acts of racketeering activity . . . ." *18 U.S.C. § 1961.* To plead a "pattern" the complaint must set forth facts showing "that the predicate acts of racketeering activity by a defendant are 'related, *and* that they amount to or pose a threat of continued criminal activity.'" *Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999)* (quoting *H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989))* (emphasis in original). "The latter so-called 'continuity' requirement can be satisfied either by showing a 'closed-ended' pattern--a series of related predicate acts extending over a substantial period of time--or by demonstrating an 'open-ended' pattern of racketeering activity that poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 183 (2d Cir. 2008).*

The Second Circuit [*18] has never held "a period of less than two years to constitute a "substantial period of time." *Cofacredit, 187 F.3d at 242.* Here, the RICO predicate acts, as alleged in the Complaint, began on April 7, 2006, when Preferred sent a letter to Gregory Sundahl to arrange an independent medical examination. (Comp. P 89.) The last act alleged in the Complaint occurred on December 28, 2007, when D&D sent Sundahl a letter regarding his attendance at an independent medical examination. (Comp. P 119.) Liberally read, Plaintiff alleges a time of less than twenty-one months. This is insufficient to constitute a substantial time. *See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 184 (2d Cir. 2008)* ("[S]ixteen-month period of time is insufficient to establish closed-ended continuity--particularly in the absence of separate schemes or large numbers of participants and victims.")

The Court finds that Plaintiffs have also failed to establish open-ended continuity. "To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, 187 F.3d at 242.* Open-ended continuity [*19] usually comes into play when the defendants are "engaged primarily in racketeering activity, and the predicate acts are inherently unlawful." *Id.; seealso GICC Capital, 67 F.3d at 466* ("an inherently unlawful act performed at the behest of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity."). There is no allegation that Defendants are primarily engaged in racketeering activity.

Here, each of the Defendants are engaged in a legitimate business. Thus, there must be some allegation "from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Cofacredit, 187 F.3d at 243.* The Complaint essentially takes issue with

2:12-cv-13500-GER-DRG Doc # 52-6 Filed 10/19/12 Pg 7 of 8 Pg ID 525

Page 6
2009 U.S. Dist. LEXIS 68093, *

Defendants' denial of Plaintiffs' no-fault benefit coverage. Taking all the allegations in the Complaint as true, the Court has not found any allegations from which it can be inferred that there is a continued threat of criminal activity.

C. *RICO Conspiracy*

The RICO conspiracy claim under *18 U.S.C. § 1962(d)* also is dismissed. "[A] RICO conspiracy allegation should be [*20] more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." *FD Prop. Holding, Inc. v. US Traffic Corp., 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002)* (internal citations omitted).

At the outset, as discussed above, Plaintiffs have failed to plead a substantive violation of RICO. Additionally, Plaintiffs have failed to show the existence of an agreement. "To establish the existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." *Cofacredit, 187 F.3d at 244* (quotations omitted). A sufficient allegation of a RICO conspiracy must "display[] the continuity necessary to support a substantive RICO violation," or an agreement to perform other predicate acts that, if carried out, would have established the requisite "pattern of racketeering activity." *Id. at 245.*

As noted previously, Plaintiffs have failed to allege the requisite "pattern of racketeering activity," either closed-ended or open-ended. Additionally, the Complaint's vague references to an agreement are [*21] insufficient to show that an agreement among the Defendants to perform other predicate acts in furtherance of a "pattern of racketeering activity" that would satisfy either the open-ended or closed-ended continuity requirement. In the absence of such allegations, the conspiracy claim necessarily fails. The RICO conspiracy claim is dismissed.

Moreover, the Court's dismissal of the RICO claims is with prejudice. "The district court has discretion whether or not to grant leave to amend" a complaint. *Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).* While a dismissal under *Rule 12(b)(6)* ordinarily is without prejudice, it appears from the Complaint itself that Plaintiffs will be unable to plead facts sufficient to establish the "pattern" requirement as discussed above. *See Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp., 101 F.3d 900, 901, 903 (2d Cir. 1996)* (affirming dismissal of entire RICO-based complaint for failure to state a claim upon which relief could be granted). Moreover, Plaintiffs have not requested leave to amend the complaint. *See generally* Pls.' Opp. In the absence of a motion or other request for leave to replead, and based on the Court's view that an amendment would [*22] be futile, the Court exercises its discretion to dismiss these claims with prejudice. *See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).*

III. *State-Law Claims*

A. *Fraud*

Plaintiffs allege that Defendants made fraudulent "verbal and written representations to the Plaintiffs regarding the reimbursement for medical services under the No Fault Law." (Comp. P 159.) Specifically, Plaintiffs claim that State Farm "purported that the physical examinations of the Plaintiffs were independent medical evaluations" and State Farm "failed to disclose to the Plaintiffs of any [sic] other rights under the policy or New York mandatory No-Fault law regarding their injuries." *Id.*

To satisfy *Rule 9(b)*, a Complaint alleging common law fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)* (quoting *Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).* For a common-law fraud action to lie, Plaintiffs must allege a "representation of material fact, the falsity of the representation, knowledge [*23] by the party making the representation that it was false when made, justifiable reliance by the plaintiff and resulting injury." *Id. at 291.* Plaintiffs' common-law fraud claim fails because Plaintiffs fail to show why the statements made were fraudulent.

Moreover, Plaintiffs have failed to show that the statements were false, knowledge on the part of State Farm that such statements were false, and importantly, Plaintiffs' reliance on these allegedly false statements. Plaintiffs state that as a result of State Farm's misrepresentations, Plaintiffs unwittingly cooperated with the IMEs. It is entirely unclear what Plaintiffs relied on, and how this reliance led to any alleged damages. Moreover, any purported reliance was clearly unreasonable. Plaintiffs could have read their own policy or researched the applicable law. Plaintiffs' Complaint does not allege any fraud by State Farm that caused Plaintiffs to "unwittingly" participate in the IMEs. Thus, the Court GRANTS State Farm's motion to dismiss Plaintiffs' fraud claims.

IV. *Breach of Contract*

"New York law is eminently clear that a proper breach of contract claim must identify specifically breached contract terms." *CreditSights, Inc. v. Ciasullo,*

*No. 05-CV-9345, 2008 U.S. Dist. LEXIS 91481, at \*32 (S.D.N.Y. Sept. 5, 2008)*; [\*24] *see also Levy v. Bessemer Trust Co., 1997 U.S. Dist. LEXIS 11056, 1997 WL 431079, at \*5 (S.D.N.Y. 1997)*. Defendants argue that Plaintiffs have failed to plead the specific provision of their contract with State Farm that has been breached. Plaintiffs do not address this argument in their opposition papers. Plaintiffs only reference to a contract claim is the following vague statement, "It is also important to keep in mind that the ONLY possible issue of contract is with Plaintiff Gregory Sundahl and not Jess Sundahl or other possible Plaintiffs of the class. State Farm eligible injured person who did not enter into a contract for a policy with State Farm would not have a contract." (Pls.' Opp. 18) Plaintiff also states, "State Farm would like the Court to believe that this is a contractual dispute which it is NOT." (*Id.* P. 10.)

It is entirely unclear whether Plaintiffs wish to pursue their breach of contract claim(s). *See Blouin v. Spitzer, 356 F.3d 348, 363 (2d Cir. N.Y. 2004)* ("Although mentioning her other state-law claims, . . . [plaintiff] provides no argument concerning them. Consequently, we consider them abandoned."). In any event, the Court agrees with Defendants that Plaintiffs have failed to set forth [\*25] the exact provision they claim was breached. Accordingly, the Court GRANTS State Farm's motion to dismiss Plaintiffs' breach of contract claim.

V. *Unjust Enrichment and Breach of Good Faith and Fair Dealing*

Under New York law, "a valid contract bars a quantum meruit action . . . where the scope of [the contract] clearly covers the dispute between the parties." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d. Cir 2005)* (internal quotation omitted). Similarly, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 81 (2d Cir. 2002)*; *seealso Ferrari v. Keybank Nat'l Ass'n, No. 06-CV-6525, 2009 U.S. Dist. LEXIS 160, 2009 WL 35330, at \*10 (W.D.N.Y. Jan. 5, 2009)* (noting that under such instances, the claims are considered redundant and duplicative). Generally, a separate cause of action for unjust enrichment or a breach of good faith and fair dealing cannot be asserted when the factual circumstances giving rise to those claims are duplicative of the factual circumstances [\*26] underlying the plaintiff's breach of contract claim. *See Mid-Hudson, 418 F.3d at 175*; *Chase Manhattan Bank v. Keystone Distributors, Inc., 873 F. Supp 808, 815 (S.D.N.Y. 1994)*.

Here, Plaintiffs allege that State Farm was unjustly enriched by maintaining the premiums paid for insurance policies but failing to reimburse eligible claims. Plaintiffs' claims relate specifically to the legal obligations created by the insurance policies with State Farm and are therefore duplicative of their breach of contract claim. Because Plaintiffs' unjust enrichment claim is born out of factual circumstances and legal obligations governed by their contract with State Farm, this claim cannot survive independently from a breach of contract claim.

Plaintiffs further allege that State Farm breached the covenant of good faith and fair dealing by failing to reimburse Plaintiffs for their eligible economic losses, and by conspiring with the IME companies to ensure claim denial. These claims relate specifically to the obligations of State Farm under the insurance policy and are not independent of the contract with State Farm.

Because both the unjust enrichment and good faith and fair dealing claims pertain to the [\*27] same factual circumstances and legal obligations contained in the contract between Plaintiffs and State Farm, the claims are duplicative of the breach of contract claim. Accordingly, State Farm's motion to dismiss Plaintiffs' unjust enrichment and breach of good faith and fair dealing claims are GRANTED.

*CONCLUSION*

For the reasons set forth herein, Defendants' motions to dismiss are GRANTED. Plaintiffs' RICO and fraud claims are dismissed with prejudice.

SO ORDERED

/s/ Joanna Seybert

Joanna Seybert, U.S.D.J.

Dated: Central Islip, New York

March 31, 2009